PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Suite 800
Newport Beach, CA  92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH CARROLL, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>        v.<br><br>CHICK-FIL-A, INC., a Georgia corporation; and DOES 1 through 10, inclusive,<br><br>                Defendants. | Case No.:  3:23-cv-314<br><br>**CLASS ACTION COMPLAINT** |

## I.     INTRODUCTION

1.     Whenever someone watches a video on www.evergreenhills.com (the "Website"), Defendants secretly report all the details to Facebook: the visitor's personally identifiable information ("PII"), the titles watched, and more. Why? Data harvesting and targeted advertising.

2.     As shown below, Defendants' actions violate the Video Privacy Protection Act of 1988, Pub L. No. 100-618, § 2, 102 Stat. 3195, 18 U.S.C. §§ 2710 *et seq.* ("VPPA"). As such, Defendants are liable to each class member for $2,500 and related relief.

## II.     JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the VPPA, a federal law.

4.     Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the acts and events giving rise to the class claims occurred in this District.

5.     Defendants are subject to personal jurisdiction because they have sufficient minimum contacts with California and do business with California residents.

## III.     PARTIES

6.     Plaintiff is an individual consumer advocate who watched a video on the Website.

7.     Defendant is a Georgia corporation that owns, operates, and/or controls the Website.

8.     The above-named Defendants, along with their affiliates and agents, are collectively referred to as "Defendants." The true names and capacities of the Defendants sued herein as DOE DEFENDANTS 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

9.      Plaintiff is informed and believes and thereon alleges that at all relevant times, every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants, and that each of the acts and/or omissions complained of herein was ratified by each of the other Defendants.

## IV.      FACTUAL ALLEGATIONS

### A.      THE FACEBOOK TRACKING PIXEL

10.     Facebook is a social networking company where users are required to identify themselves by "the name they go by in everyday life."[1]  To create a Facebook account, a user must provide first name, last name, date of birth and gender.[2]

11.     Facebook generates revenue by selling advertising space on its website based upon its ability to identify user interests.[3]  Facebook can identify user interests by monitoring "offsite" user activity, which allows Facebook to judge user interests beyond what users freely disclose.[4]

12.     Facebook enables advertisers to identify "people who have already shown interest in [their] business", which Facebook calls "Custom Audiences."[5] The Custom Audiences tool requires advertisers to supply user data to Facebook, and most do so via the Facebook Tracking Pixel.[6]

---

[1]  FACEBOOK, COMMUNITY STANDARDS, PART IV INTEGRITY AND AUTHENTICITY, https://www.facebook.com/communitystandards/integrity_authenticity    (last    visited January 2023).
[2]  FACEBOOK, SIGN UP, https://www.facebook.com/ (last visited January 2023).
[3]    FACEBOOK,    WHY    ADVERTISE    ON    FACEBOOK, https://www.facebook.com/business/help/20502906038706 (last visited January 2023).
[4]  FACEBOOK, AD TARGETING: HELP YOUR ADS FIND THE PEOPLE WHO WILL LOVE YOUR BUSINESS, https://www.facebook.com/business/ads/ad-targeting (last visited January 2023).
[5]    FACEBOOK,    ABOUT    EVENTS    CUSTOM    AUDIENCE, https://www.facebook.com/business/help/366151833804507?id=300360584271273 (last visited January 2023).
[6]    FACEBOOK,    CREATE    A    CUSTOMER    LIST    CUSTOM    AUDIENCE, https://www.facebook.com/business/help/170456843145568?id=2469097533764    94 (last   visited   January   2023);   FACEBOOK,   CREATE   A   WEBSITE   CUSTOM AUDIENCE,

Continued on the next page

13.     The Facebook Tracking Pixel is a device included programming code that advertisers can integrate into their website.  Once activated, the Facebook Tracking Pixel "tracks the people and type of actions they take."[7]  When the Facebook Tracking Pixel captures an action, it sends a record to Facebook, which Facebook then assimilates into the Custom Audiences dataset.

14.     Advertisers control what actions—or, as Facebook calls it, "events"— the Facebook Tracking Pixel will collect, including the website's metadata, along with what pages a visitor views.[8]

15.     Advertisers control how the Facebook Tracking Pixel identifies visitors. The Facebook Tracking Pixel is configured to automatically collect "HTTP Headers" and "Pixel-specific Data."[9]  HTTP Headers collect "IP addresses, information about the web browser, page location, document, referrer and persons using the website."[10]  Pixel-specific Data includes "the Pixel ID and cookie."[11]

## B.     DEFENDANTS ARE A "VIDEO TAPE SERVICE PROVIDER" UNDER THE VPPA.

16.     Defendants are engaged in the business of "rental, sale, *or delivery of* prerecorded video cassette tapes *or similar audio visual materials*."  18 U.S.C. § 2710(a)(4) (emphasis added).   Specifically, Defendants' business model involves monetizing videos.

17.     The Website hosts and delivers content including videos.

---

Continued from the previous page
https://www.facebook.com/business/help/1474662202748341?id=2469097953376494 (last visited January 2023).
[7] FACEBOOK,RETARGETING, https://www.facebook.com/business/oals/reta getting.
[8] See FACEBOOK, FACEBOOK PIXEL, ACCURATE EVENT TRACKING, ADVANCED,https://developers.facebook.com/docs/facebook-pixel/advanced/; see also FACEBOOK, BEST PRACTICES FOR FACEBOOK PIXEL SETUP, https://www.facebook.com/business/help/218844828315224?id=1205376682832142 (last visited January 2023).
[9] FACEBOOK, FACEBOOK PIXEL, https://developers.facebook.com/docs/facebook-pixel/ (last visited January 2023).
[10] *Id.*
[11] *Id.*

**Figure 1**



### C.   DEFENDANT DISCLOSES PII TO FACEBOOK.

18.   The VPPA defines PII to "include[]" "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3).  This means "information that would 'readily permit an ordinary person to identify a specific individual's video-watching behavior.' " *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (quoting *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 290 (3d Cir. 2016)).

19.   Here, Defendant discloses information which allows Facebook (and any ordinary person) to identify a user's video-watching behavior:

**Figure 2**



20.    Defendants have configured the PageView event to transmit the Universal Resource Locator ("URL") and the category of content selected.

**Figure 3**



21.    In the above figure, for example, Defendants disclose a webpage's URL.

22.    Microdata discloses the video's title and other descriptors.

**Figure 4**



23.    The "Button Click Automatically Detected" event discloses when the "Play Film" button is clicked by the visitor along with descriptive information about the button, page, and video.

**Figure 5**



24.    The aggregate pixel events (Page View, Microdata Automatically Detected, and Button Click Automatically Detected) permit an ordinary person to identify a video's content, title, and location.

25.    When a visitor watches a video on evergreenhills.com while logged into Facebook, Defendants compel a visitor's browser to transmit the c_user cookie to Facebook. The c_user cookie contains that visitor's unencrypted Facebook ID. When accessing the above video, for example, Defendants compelled the browser to send nine cookies:

**Figure 6**

| Name | Value | Domain |
|---|---|---|
| xs | 41%3AitCotXRoSKdRkg%3... | .facebook.com |
| c_user | 100087271304389 | .facebook.com |
| presence | C%7B%22t3%22%3A%5B... | .facebook.com |
| sb | Z7VeY5082dzpP0ecvF3j2thu | .facebook.com |
| datr | ErdeY8DwZw6OUY5T3qHV... | .facebook.com |
| locale | en_US | .facebook.com |
| fr | 0guCJWgHtnQ5r9aft.AWV5x... | .facebook.com |
| wd | 1179x721 | .facebook.com |
| dpr | 2 | .facebook.com |

26.     When a visitor's browser has recently logged out of Facebook, Defendants will compel the browser to send a smaller set of cookies:

| Name | Value | Domain |
|---|---|---|
| locale | en_US | .facebook.com |
| fr | 0guCJWgHtnQ5r9aft.AWUR... | .facebook.com |
| datr | ErdeY8DwZw6OUY5T3qHV... | .facebook.com |
| dpr | 2 | .facebook.com |
| wd | 1179x721 | .facebook.com |
| sb | Z7VeY5082dzpP0ecvF3j2thu | .facebook.com |

**Figure 7**

27.     The fr cookie contains an encrypted Facebook ID and browser identifier.[12] The datr cookie also identifies a browser.[13]  Facebook, at a minimum, uses the fr cookie to identify particular users.[14]

---

[12] DATA PROTECTION COMMISSIONER, FACEBOOK IRELAND LTD, REPORT OF       RE-AUDIT       (Sept.       21,       2012),       http://www.europe-v facebook.org/ODPC_Review.pdf (last visited January 2023).
[13]      FACEBOOK,   COOKIES   &   OTHER   STORAGE   TECHNOLOGIES, https://www.facebook.com/policy/cookies/ (last visited January 2023).
[14]      FACEBOOK,   COOKIES   &   OTHER   STORAGE   TECHNOLOGIES, https://www.facebook.com/policy/cookies/ (last visited January 2023).

28.   Facebook, at a minimum, uses the fr and c_user cookies to link to Facebook IDs and corresponding Facebook profiles.

29.   A Facebook ID is personally identifiable information.  Anyone can identify a Facebook profile—and all personal information publicly listed on that profile—by appending the Facebook ID to the end of Facebook.com.

30.   Through the Facebook Tracking Pixel's code, these cookies combine the identifiers with the event data, allowing Facebook to know, among other things, what evergreenhills.com videos a user has watched.[15]

31.   By compelling a visitor's browser to disclose the c_user cookie alongside event data for videos, Defendants knowingly disclose information sufficiently permitting an ordinary person to identify a specific individual's video viewing behavior.

32.   By compelling a visitor's browser to disclose the fr cookie alongside event data for videos, Defendants knowingly disclose information sufficient to permit an ordinary person to identify a specific individual's video viewing behavior.

33.   By compelling a visitor's browser to disclose the fr cookie and other browser identifiers alongside event data for videos, Defendants knowingly disclose information sufficiently permitting an ordinary person to identify a specific individual's video viewing behavior.

34.   Facebook confirms that it matches activity on evergreenhills.com with a user's profile.  Facebook allows users to download their "off-site activity," which is a "summary of activity that businesses and organizations share with us about your interactions, such as visiting their apps or websites."[16]  The off-site activity report confirms that Defendants identify an individual's video viewing activities.

---

[15]  FACEBOOK, GET STARTED, https://developers.facebook.com/docs/meta-pixel/get-started (last visited January 2023).

[16]  *See* https://www.facebook.com/help/2207256696182627 (Off-Facebook Activity is only a "summary" and Facebook acknowledges "receiv[ing] more details and activity than what appears in your Facebook activity." What is more, it omits "information we've received when you're not logged into Facebook, or when we can't confirm that you've previously used Facebook on that device.") (last visited January 2023).

**D.    PLAINTIFF IS A "CONSUMER" UNDER THE VPPA.**

35.    The VPPA defines the term "consumer" to mean "any renter, purchaser, or subscriber of goods or services from a video tape service provider[.]"  18 U.S.C. § 2710(a)(1).

36.    Plaintiff has eaten at Defendant's restaurant before.  As such, Plaintiff is a purchaser of Defendant's products and therefore a "consumer" under VPPA.

37.    Plaintiff also downloaded Defendants' mobile application onto Plaintiff's smartphone device, which established Plaintiff's seamless access to Defendants' Website.  As such, Plaintiff is a "subscriber" of goods or services from a "video tape service provider" within the meaning of 18 U.S.C. § 2710(a)(1).  *See Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 487-90 (1st Cir. 2016) ("[Plaintiff's] decision to download the App seems a fair enough indication that he intended more than a one-shot visit.").

38.    Plaintiff watched at least one video on the Website within two years from the date of the act complained of.

39.    Plaintiff is a consumer privacy advocate with dual motivations for watching a video on Defendants' Website.  First, Plaintiff was genuinely interested in learning more about the goods and services offered by Defendants.  Second, Plaintiff is a "tester" who works to ensure that companies abide by the privacy obligations imposed by federal law.  As someone who advances important public interests at the risk of vile personal attacks, Plaintiff should be "praised rather than vilified." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006).

40.    In enacting the VPPA, Congress deliberately chose to extend its protections to a "consumer" even if such consumer is not a "purchaser" of the goods or services of a "video tape service provider". *Yershov*, 820 F.3d at 487 ("Congress would have had no need to include a third category of persons protected under the Act if it had intended that only persons who pay money for videos be protected, which militates against an interpretation of the statute incorporating such an element.").  As such,

statutes like the VPPA are largely enforced by civic-minded "testers" such as Plaintiff. *See Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1115-16 (9th Cir. 2014) (explaining why testers have Article III standing and generally discussing why plaintiffs who enforce consumer protection and civil rights statutes need not demonstrate monetary damages or even mental distress in order to suffer an Article III injury in fact).[17]

41.    During the class period, Plaintiff visited evergreenhills.com and watched one or more videos.

42.    When Plaintiff watched videos on evergreenhills.com, Defendants disclosed event data, which recorded and disclosed the video's title, description, and URL, to Facebook. Alongside this event data, Defendants also disclosed identifiers for Plaintiff, including the c_user and fr cookies. In other words, Defendants did exactly what the VPPA prohibits: they disclosed Plaintiff's video viewing habits to a third party.

43.    Given the nature of Defendants' business, visitors would be shocked and appalled to know that Defendants secretly disclose to Facebook all of the key data regarding a visitor's viewing habits.

44.    Defendants' conduct is illegal, offensive, and contrary to visitor expectations: indeed, a recent study conducted by the Electronic Privacy Information Center, a respected thought leader regarding digital privacy, found that: (1) nearly 9 in 10 adults are "very concerned" about data privacy, and (2) 75% of adults are unaware of the extent to which companies gather, store, and exploit their personal data.

---

[17] Civil rights icon Rosa Parks was acting as a "tester" when she initiated the Montgomery Bus Boycott in 1955, as she voluntarily subjected herself to an illegal practice to obtain standing to challenge the practice in Court. *See* https://www.naacpldf.org/press-release/ldf-pays-tribute-to-rosa-parks-on-the-sixtieth-anniversary-of-her-courageous-stand-against-segregation/ "(Contrary to popular myth, Rosa Parks was not just a tired seamstress who merely wanted to sit down on a bus seat that afternoon. She refused to give up her seat on principle. Parks had long served as the secretary of the Montgomery branch of the NAACP [and] challenging segregation in Montgomery's transportation system was on the local civil rights agenda for some time.") (last visited Jan. 2023).

45.     By disclosing Plaintiff's event data and identifiers to Facebook, Defendant knowingly disclosed Plaintiff's PII to a third-party.

## V.        CLASS ALLEGATIONS

46.     Plaintiff brings this action individually and on behalf of all others similarly situated (the "Class") defined as follows:

**All persons in the United States who are consumers under VPPA who watched video content on evergreenhills.com or any other website owned, operated, or controlled by Defendants and whose personally identifiable information was disclosed by Defendants to Facebook or any other third party during the class period.**

47.     **Numerosity (Fed. R. Civ. P. 23(a)(1)):**   At this time, Plaintiff does not know the exact number of members of the aforementioned Class. However, given the popularity of Defendant's Website, the number of persons within the Class is believed to be so numerous that joinder of all members is impractical.

48.     **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2), 23(b)(3)):** There is a well-defined community of interest in the questions of law and fact involved in this case.   Questions of law and fact common to the members of the Class that predominate over questions that may affect individual members of the Class include:

a)      whether Plaintiff and the Class are within the definition of the term, "consumer," used in the VPPA;

b)      whether Defendants collected Plaintiff's and the Class's PII;

c)      whether Defendants unlawfully disclosed and continue to disclose their users' PII in violation of the VPPA;

d)      whether Defendants' disclosures were committed knowingly; and

e)      whether Defendants disclosed Plaintiff's and the Class's PII without consent.

49.     **Typicality (Fed. R. Civ. P. 23(a)(3)):**   Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, used

evergreenhills.com to watch videos, and had PII collected and disclosed by Defendants.

50. **Adequacy (Fed. R. Civ. P. 23(a)(4)):**   Plaintiff has retained and is represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation.  Moreover, Plaintiff is able to fairly and adequately represent and protect the interests of the Class.

51. **Superiority (Fed. R. Civ. P. 23(b)(3)):**  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable.  Even if every member of the Class could afford to pursue individual litigation, the court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.  Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.  By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class.  Plaintiff anticipates no difficulty in the management of this action as a class action.

## VI.   CLAIM FOR RELIEF

### VIOLATION OF THE VIDEO PRIVACY PROTECTION ACT

#### 18 U.S.C. § 2710 *et seq.*

52. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs above as if fully set forth herein.

53. Defendants are "video tape service provider[s]" that create, host, and deliver videos on the Website, thereby "engag[ing] in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials."  18 U.S.C. § 2710(a)(4).  Defendants also use the videos to collect and disclose viewers' PII so they can later retarget them for

1    advertisements.

2        54.    Plaintiff and members of the Class are "consumers" because they have

3    either downloaded Defendant's mobile device application or purchased Defendant's

4    goods or services and have watched videos on WEBSITE.com.  18 U.S.C. § 2710(a)(1).

5        55.    Defendants disclosed to a third party, Facebook, Plaintiff's and the Class

6    members' PII.  Defendants utilized the Facebook Tracking Pixel to compel Plaintiff's

7    web browser to transfer Plaintiff's identifying information, like Plaintiff's Facebook ID,

8    along with Plaintiff's event data, like the title of the videos that Plaintiff viewed.

9        56.    Plaintiff and the Class members viewed videos using evergreenhills.com.

10        57.    Defendants knowingly disclosed Plaintiff's PII because they used that data

11    to build audiences on Facebook and retarget Plaintiff and Class members for

12    Facebook's advertising campaigns.

13        58.    Defendants did not obtain the informed, written consent of Plaintiff or the

14    Class members to disclose PII concerning Plaintiff or the Class members to third

15    parties.

16        59.    Defendant's disclosures were not made in the "ordinary course of

17    business" as the term is defined by the VPPA because they were not necessary for "debt

18    collection activities, order fulfillment, request processing, [or] the transfer of

19    ownership."  18 U.S.C. § 2710(a)(2).

20                            **PRAYER FOR RELIEF**

21        WHEREFORE, Plaintiff seeks judgment against Defendants, individually and on

22    behalf of all others similarly situated, as follows:

23        a.    For an order certifying the Class under Rule 23 of the Federal Rules of

24              Civil Procedure, naming Plaintiff as representative of the Class;

25        b.    For an order declaring that Defendants' conduct violates the VPPA;

26        c.    For an order finding in favor of Plaintiff and the Class on all claims

27              asserted herein;

28        d.    An award of statutory damages under the VPPA;

e.  An award of punitive damages;

f.  For prejudgment interest on all amounts awarded;

g.  For injunctive relief to stop the illegal conduct; and

h.  For an order awarding Plaintiff and the Class their reasonable attorneys' fees and other litigation costs reasonably incurred.

Dated:  January 22, 2023

PACIFIC TRIAL ATTORNEYS
A Professional Corporation

By:_____
    Scott J. Ferrell
    Attorneys for Plaintiff