Bethany G. Lukitsch (314376)
BAKER & HOSTETLER LLP
11601 Wilshire Boulevard
Suite 1400
Los Angeles, CA  90025-0509
Telephone:    310.820.8800
Facsimile:    310.820.8859
Email:    blukitsch@bakerlaw.com

Attorneys for Defendant
CHICK-FIL-A, INC.

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

KEITH CARROLL. individually and on behalf of all others similarly situated,

               Plaintiff,

     v.

CHICK-FIL-A, INC., and DOES 1 through 10, inclusive,

               Defendant.

**Case No.: 4:23-cv-00314-YGR**

**NOTICE OF MOTION AND RULE 12(B)(6) MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

[*Filed Concurrently with [Proposed] Order]*

Date:    May 30, 2023
Time:    2:00 p.m.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**TO THE HONORABLE COURT, AND TO PLAINTIFF AND HIS COUNSEL OF RECORD HEREIN:**

**PLEASE TAKE NOTICE THAT** on May 30, 2023 at 2:00 p.m. or as soon thereafter as counsel may be heard, in Courtroom 1 – 4th Floor, of the United States District Court, Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, Defendant Chick-fil-A, Inc. ("Chick-fil-A") will and hereby does move this Court for an Order granting Chick-fil-A's Motion to Dismiss Plaintiff's Class Action Complaint.

This Motion is made pursuant to Fed. R. Civ. P. 12(b)(6) for Plaintiff's failure to state a claim upon which relief may be granted. Specifically, Plaintiff fails to state a claim under the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, because he fails to allege that Chick-fil-A is a "video tape service provider" regulated by the VPPA, that Plaintiff is a consumer protected by the VPPA, or that Chick-fil-A shared Plaintiff's personally identifiable information in violation of the VPPA. Further, the VPPA violates the First Amendment to the U.S. Constitution, both on its face and as applied to Chick-fil-A. Chick-fil-A's motion is based on this Notice of Motion, the supporting Memorandum of Points and Authorities, the pleadings and papers on file in this action, and upon such further argument and evidence as may be presented prior to or at the hearing of this Motion.

Dated: March 27, 2023

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By:    /s/ *Bethany G. Lukitsch*

Bethany G. Lukitsch (314376)

Email: blukitsch@bakerlaw.com

Attorneys for Defendant

CHICK-FIL-A, INC.,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................. 1

BACKGROUND .................................................................................................. 2

ARGUMENT ....................................................................................................... 3

I.    PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF THE VPPA. ........ 3

    A.    Standard of Law. .............................................................................. 3

    B.    Plaintiff Does Not Allege That Chick-fil-A Is A Video Tape Service Provider. ........................................................................................ 3

    C.    Plaintiff Does Not Allege That He Is A "Consumer" Protected By The VPPA. .......................................................................................... 5

    D.    Plaintiff Does Not Allege That Chick-fil-A Disclosed PII. ................... 7

    E.    Plaintiff Does Not Allege That Chick-fil-A Knowingly Disclosed PII. ... 10

II.    THE VPPA IS FACIALLY UNCONSTITUTIONAL. ................................... 11

    A.    The VPPA Is Unconstitutionally Vague And Overbroad. ................. 12

    B.    The Government Has No Substantial Interest In Restricting Disclosure Of Identifying Information With Video Watch Information. ................. 14

    C.    The VPPA's Requirements Do Not Directly and Materially Advance The Government's Interest. .......................................................... 15

    D.    The VPPA's Requirements Are Far More Extensive Than Necessary To Serve Any Government Interest. ............................................... 15

III.    THE VPPA, AS APPLIED, VIOLATES THE FIRST AMENDMENT. ............. 16

CONCLUSION ................................................................................................. 16

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- i -

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009).............................................................................................. 3

*Austin-Spearman v. AMC Network Ent. LLC,*
98 F. Supp. 3d 662 (S.D.N.Y. 2015)................................................................... 5, 6

*Bd. of Trustees of State Univ. of New York v. Fox,*
492 U.S. 469 (1989)............................................................................................. 15

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)............................................................................................... 3

*Broadrick v. Oklahoma,*
413 U.S. 601 (1973)................................................................................... 12, 13, 14

*Brown v. Entertainment Merchants Assoc.,*
564 U.S. 786 (2011)............................................................................................. 14

*Central Hudson Gas & Electric Corp. v. Public Service Commission of New York,*
447 U.S. 557 (1980)............................................................................................. 12

*Daniel v. Cantrell,*
375 F.3d 377 (6th Cir. 2004).......................................................................... 15, 16

*Eichenberger v. ESPN, Inc.,*
C14–463, 2015 WL 7252985 (W.D. Wash. May 7, 2015).................................... 8

*Ellis v. Cartoon Network, Inc.,*
2014 WL 5023535 (N.D. Ga. Oct. 8, 2014), *aff'd on other grounds*, 803 F.3d
1251 (11th Cir.2015).............................................................................................. 8

*Ellis v. Cartoon Network, Inc.,*
803 F.3d 1251 (11th Cir. 2015).......................................................................... 5, 6

*In re Facebook, Inc. Internet Tracking Litig.,*
956 F.3d 589 (9th Cir. 2020), *cert. denied sub nom. Facebook, Inc. v. Davis,*
209 L. Ed. 2d 464, 141 S. Ct. 1684 (2021) ......................................................... 9

*In re Hulu Priv. Litig.,*
No. C 11-03764 LB, 2012 WL 3282960 (N.D. Cal. Aug. 10, 2012)...................... 4

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- ii -

*IMS Health, Inc. v. Sorrell*,
    564 U.S. 552 (2011) ..................................................................................... 11, 15

*Locklear v. Dow Jones & Co.*,
    101 F. Supp. 3d 1312 (N.D. Ga. 2015), *abrogated on other grounds*, 803 F.3d
    1251 (11th Cir.2015) ............................................................................................ 8

*In re Meta Pixel Healthcare Litig.*,
    No. 22-cv-03580, 2022 WL 17869218 (Dec. 22, 2022, N.D. Cal. 2022) ........... 9, 10

*Mount v. PulsePoint, Inc.*,
    No. 13 CIV. 6592 (NRB), 2016 WL 5080131 (S.D.N.Y. Aug. 17, 2016), *aff'd*,
    684 F. App'x 32 (2d Cir. 2017) .......................................................................... 9

*In re Nickelodeon Consumer Privacy Litig.*,
    2014 WL 3012873 (D.N.J. July 2, 2014) ............................................................ 8

*In re Nickelodeon Consumer Privacy Litig.*,
    827 F.3d 262 (3d Cir. 2016) ............................................................................... 7

*Perry v. Cable News Network, Inc.*,
    854 F.3d 1336 (11th Cir. 2017) .......................................................................... 6

*Robinson v. Disney Online*,
    152 F. Supp. 3d 176 (S.D.N.Y. 2015) ............................................................. 7, 8

*U.S. West, Inc. v. FCC*,
    182 F.3d 1224 (10th Cir. 1999) ..................................................................... 11, 12

*In re Vizio, Inc., Consumer Priv. Litig.*,
    238 F. Supp. 3d 1204 (C.D. Cal. 2017) ............................................................. 4

**Statutes**

18 U.S.C. § 2710 .................................................................................................. *passim*

18 U.S.C. § 2710(a)(1) ......................................................................................... 5, 6

18 U.S.C. § 2710(a)(3) ............................................................................................ 7

18 U.S.C. § 2710(a)(4) ......................................................................................... 3, 4

18 U.S.C. § 2710(a)-(b) .......................................................................................... 12

**Rules**

Fed. R. Civ. P. 12(b)(6) .................................................................................... 1, 3, 16

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- iii -

1

**Other Authorities**

134 Cong. Rec. H10409-01, 1988 WL 178796 ................................................................ 6

S.Rep. No. 100–599 ........................................................................................................ 4

U.S. Const. amend. I .................................................................................................. 2, 11

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- iv -

1

## **INTRODUCTION**

2

A quick-service restaurant franchise system is not a video tape service provider. The

3

Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), passed to address a video rental

4

store's disclosure of Judge Robert Bork's video rental history to the media without his knowledge

5

and consent, applies only to a "person, *engaged in the business*, in or affecting interstate or

6

foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio

7

visual materials." Plaintiff seeks to assert a single claim under the VPPA.  That is where this case

8

should end.

9

Chick-fil-A, Inc. ("Chick-fil-A") operates a franchise system of retail quick-service

10

restaurants specializing in a boneless breast of chicken sandwich.  Most Chick-fil-A brand

11

restaurant businesses are owned and operated by independent franchisees. Chick-fil-A also operates

12

various Chick-fil-A and other restaurants itself from time to time and may do so in the future

13

directly or through its affiliates and subsidiaries. Chick-fil-A operated a free public website at

14

www.evergreenhills.com (the "Chick-fil-A Website"). Plaintiff Keith Carroll ("Plaintiff") alleges

15

that he watched a video on this website and that Chick-fil-A "disclosed the video's title, description,

16

and URL, to Facebook" along with "identifiers for Plaintiff, including the c_user and fr cookies."

17

(Compl. ¶ 42.) Plaintiff now brings this Class Action Complaint asserting one count for Chick-fil-

18

A's alleged violation of the VPPA. Plaintiff's claim, however, fails to state a claim upon which

19

relief can be granted and, accordingly, should be dismissed pursuant to Rule 12(b)(6).

20

First, Plaintiff fails to allege that Chick-fil-A is a "video-tape service provider" ("VTSP")

21

under the VPPA. This is because not only is Chick-fil-A not *engaged in the business of* delivering

22

video materials, but Chick-fil-A's business is nothing like the brick and mortar video rental store

23

intended to be regulated by the VPPA. Second, Plaintiff fails to allege that he is a "consumer"

24

protected by the VPPA because Plaintiff has not purchased, rented, or subscribed to any video-tape

25

goods or services provided by Chick-fil-A. Third, Plaintiff fails to allege that Chick-fil-A disclosed

26

Plaintiff's personally identifiable information ("PII") to Facebook, let alone knowingly disclosed

27

the information, but rather specifically alleges that Plaintiff's own browser, through the use of

28

- 1 -

NOTICE OF MOTION AND RULE 12(B)(6) MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO.: 3:23-CV-00314-YGR
4892-4893-3975.5

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

cookies, disclosed any information. Fourth, the VPPA is an unconstitutional restraint on commercial speech in violation of the First Amendment of the U.S. Constitution.

Plaintiff has not stated a claim upon which relief can be granted and, accordingly, Plaintiff's Class Action Complaint should be dismissed in its entirety, with prejudice.

## **BACKGROUND**

Plaintiff filed his putative Class Action Complaint against Chick-fil-A on January 22, 2023, alleging one count for violation of the VPPA (the "Complaint"). Specifically, Plaintiff alleges that Chick-fil-A is a "video tape service provider" ("VTSP") because it "hosts and delivers content including videos" on its website, www.evergreenhills.com. (Compl. ¶ 17.) Plaintiff alleges that he is a "consumer" under the VPPA because he has eaten at Chick-fil-A branded restaurant businesses before and has downloaded Chick-fil-A's mobile application which established Plaintiff's "seamless access to Defendant's Website." (Compl. ¶¶ 36-37.)

Plaintiff alleges that Chick-fil-A's Website uses the Meta Pixel, and that the Pixel sends information about videos that Plaintiff watches on the website to Facebook. (Compl. ¶¶ 20-23.) Plaintiff further alleges that when he is logged into Facebook and visits Chick-fil-A's Website, the Pixel "compel[s] a visitor's browser to transmit the c_user cookie to Facebook" which "contains that visitor's unencrypted Facebook ID." (Compl. ¶ 25.) Plaintiff alleges that by doing so, Chick-fil-A discloses personally identifiable information ("PII") to Facebook because "anyone can identify a Facebook profile—and all personal information publicly listed on that profile—by appending the Facebook ID to the end of Facebook.com." (Compl. ¶ 29.) Plaintiff alleges that Chick-fil-A violated the VPPA by sending the above-described information to Facebook through the Meta Pixel without first obtaining Plaintiff's informed written consent to disclose such PII. (Compl. ¶ 58.)

Plaintiff aims to represent a class of persons defined as, "All persons in the United States who are consumers under VPPA who watched video content on evergreenhills.com or any other website owned, operated, or controlled by Defendants and whose personally identifiable information was disclosed by Defendants to Facebook or any other third party during the class

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

period." (Compl. ¶ 46.) On behalf of himself and the class, Plaintiff requests (1) an order declaring that Chick-fil-A's conduct violates the VPPA and injunctive relief to stop the illegal conduct, (2) an award of statutory damages, (3) punitive damages, (4) prejudgment interest on all amounts awarded, and (5) reasonable attorney's fees and other litigation costs. (Compl. at pp. 15-16.)

## ARGUMENT

### I.    PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF THE VPPA.

#### A.    Standard of Law.

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). A complaint may not rest on "'naked assertion' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

#### B.    Plaintiff Does Not Allege That Chick-fil-A Is A Video Tape Service Provider.

A VTSP is defined under the VPPA as "any person, ***engaged in the business***, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials . . . ." 18 U.S.C. § 2710(a)(4) (emphasis added). The Complaint contains no allegations regarding "prerecorded video cassette tapes," nor does it allege that Chick-fil-A is "engaged in the business" of rental, sale or delivery of "similar audio-visual materials."

This failure is not a mere pleading deficiency, but rather the result of the requirements imposed by the statutory language. "Business" is defined as "a usually commercial or mercantile activity engaged in as a means of livelihood." *See* "business" (def. 1a), https://www.merriam-webster.com/dictionary/business (last accessed March 11, 2023). "Livelihood" is defined as "means of support or subsistence." *See* "livelihood" (def. 1), https://www.merriam-webster.com/dictionary/livelihood (last accessed March 11, 2023). Thus, to be "engaged in the

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

business" of a particular activity, that activity must be the company's "means of support or subsistence." As one court has explained, to be "engaged in the business…of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials," 18 U.S.C. § 2710(a)(4), "the defendant's product must not only be substantially involved in the conveyance of video content to consumers but also significantly tailored to serve that purpose." *In re Vizio, Inc., Consumer Priv. Litig*., 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017). In other words, delivering video content must be "a focus of the defendant's work." *Id*. Businesses which are only "peripherally or passively involved in video content delivery do not fall within the statutory definition of a video tape service provider." *Id*. at 1221-22. Chick-fil-A is not **engaged in the business** of providing video content. As Plaintiff alleges, Chick-fil-A operates a franchise restaurant system (Compl. ¶ 36; *see also* Compl. ¶¶ 1, 6, 17, 37, 38) (incorporating by reference Chick-fil-A's Website which explains that Chick-fil-A is "[s]erving communities across the country with more than 2,400 restaurants") (https://www.chick-fil-a.com/about/who-we-are)); *see In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017) ("a defendant must be '**engaged in the business ... of ... delivery of**' video content . . .When used in this context, 'business' connotes 'a particular field of endeavor,' *i.e.,* a focus of the defendant's work.") (emphasis added). Simply making videos available on its website, as an incidental medium for promoting its CFA branded restaurant businesses, does not make Chick-fil-A a business "engaged in" the rental, sale, or delivery of videos. If this was the case, quite literally *any person* that provides video media in *any capacity* would fall under the definition of a VTSP. *See In re Vizio*, 238 F. Supp. 3d at 1221.

Furthermore, Plaintiff does not allege that the videos on Chick-fil-A's Website are "similar audio-visual materials." Indeed, "Congress's concern with privacy and protecting the confidentiality of an individual's choices is relevant context to the Senate Report's discussion of 'similar audio visual materials, such as laser discs, open-reel movies, and CDI technologies.'" *In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2012 WL 3282960, at *6 (N.D. Cal. Aug. 10, 2012) (citing S.Rep. No. 100–599 at 12). The "similar" materials contemplated by Congress were the

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

hours-long video recordings such as motion pictures ("open-reel movies") made available at the typical brick-and-mortar video stores that existed when Congress drafted the VPPA. *See also* laser disc (def. 1) (https://www.merriam-webster.com/dictionary/laser%20disc) (last visited February 4, 2023) (defined as, "one containing a video recording (as of a motion picture)." Such types of "audio visual materials" *differ greatly* from the short and limited videos on Chick-fil-A's website. And Plaintiff does not allege that Congress considered, yet alone intended, to regulate businesses that distribute such short promotional clips.

In short, Chick-fil-A is not a VTSP because it is not "engaged in the business" of selling, renting, or delivering any video materials, nor are the promotional videos on its website "similar" to the "prerecorded video cassette tapes" covered by the statute. Rather, Chick-fil-A operates a franchise system of quick-service restaurants and is not a "video tape service provider" subject to the VPPA. Therefore, Plaintiff's VPPA claim should be dismissed with prejudice.

### C.   Plaintiff Does Not Allege That He Is A "Consumer" Protected By The VPPA.

The VPPA defines a "consumer" as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1) (emphasis added). Here, in an attempt to establish his status as a "consumer," Plaintiff alleges only that he "downloaded Defendants' mobile application onto Plaintiff's smartphone device, which established Plaintiff's seamless access to Defendants' Website" and has "eaten at Defendant's restaurant before." (Compl. ¶¶ 36-37.) Both of these allegations, however, fail to bring Plaintiff within the definition of a "consumer" under the VPPA.

First, Plaintiff's alleged download of Chick-fil-A's free app does not make Plaintiff a consumer under the VPPA. "[D]ownloading an app for free and using it to view content at no cost is not enough to make a user of the app a 'subscriber' under the VPPA, as there is no ongoing commitment or relationship between the user and the entity which owns and operates the app." *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1257 (11th Cir. 2015). *See also Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662, 669 (S.D.N.Y. 2015) ("Conventionally, 'subscription' entails an exchange between subscriber and provider whereby the subscriber imparts money and/or

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

personal information in order to receive a future and recurrent benefit, whether that benefit comprises, for instance, periodical magazines, club membership, cable services, or email updates."). Plaintiff fails to allege any "ongoing commitment or relationship" between himself and Chick-fil-A as a result of his download of the free app, and therefore, Plaintiff has not alleged that he is a "consumer" under the VPPA by virtue of his use of the app.

Second, Plaintiff's allegation that he "has eaten at Defendant's restaurant before" does not make him a "consumer" under the VPPA. As an initial matter, Plaintiff does not even allege that he personally purchased any food from a Chick-fil-A brand restaurant business, only that he has eaten there. This alone means he has not sufficiently alleged he is a consumer of Chick-fil-A. *See* 18 U.S.C. § 2710(a)(1) (consumer must be "renter, purchaser, or subscriber of goods or services"). Moreover, even if Plaintiff has purchased food from a Chick-fil-A brand restaurant business, Plaintiff's alleged past purchase of food in a Chick-fil-A brand restaurant business is entirely disconnected from his alleged use of the website on which he allegedly viewed a video. In other words, Chick-fil-A's alleged provision of "video-tape services" through its website is entirely unrelated to Plaintiff's alleged past purchase of food, and therefore, Plaintiff is not a "consumer" of a "video tape service provider" by virtue of his alleged purchase of food. *See Perry v. Cable News Network, Inc.,* 854 F.3d 1336, 1342-43 (11th Cir. 2017) (plaintiff was not "subscriber" of video content on free CNN app merely because he paid for cable TV separate from app which provided video materials); *Ellis*, 803 F.3d at 1257 (holding same); *Austin-Spearman*, 98 F. Supp. 3d at 671 (expressing doubt that "a plaintiff can constitute a subscriber under the VPPA if she subscribes only to a portion of the provider's services that are distinct and set apart from its provision of videos"). Indeed, the VPPA's legislative history makes clear that the statute should be restricted to only those products or services sold by VTSP's that involve video materials. *See* 134 Cong. Rec. H10409-01, 1988 WL 178796 (Rep. Kastenmeier) ("The definition of personally identifiable information includes the term "video" to make clear that simply because a business is engaged in the sale or rental of video materials or services ***does not mean that all of its products or services are within the scope of the bill***.") (emphasis added.) Therefore, as here, where a person

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    allegedly uses products or services unrelated to an entity's rental, sale, or delivery of video

2    materials, the person is not a consumer protected by the VPPA.

3    **D. Plaintiff Does Not Allege That Chick-fil-A Disclosed PII.**

4        Unless a VTSP has provided notice and obtained consent, it is prohibited from "knowingly

5    disclos[ing], to any person, personally identifiable information concerning any consumer of such

6    provider." 18. U.S.C. § 2710; *see also Robinson v. Disney Online*, 152 F. Supp. 3d 176, 179

7    (S.D.N.Y. 2015); *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 279 (3d Cir. 2016)

8    (same). The VPPA states that PII "includes information which identifies a person as having

9    requested or obtained specific video materials or services from a video tape service provider." 18

10   U.S.C. § 2710(a)(3). "[T]he information disclosed by a video tape service provider must, at the

11   very least, identify a particular person—not just an anonymous individual—and connect this

12   particular person with his or her viewing history." *Robinson*, 152 F. Supp. 3d at 179 (emphasis in

13   original).

14       Plaintiff does not adequately allege, and cannot allege, that Chick-fil-A disclosed that

15   Plaintiff requested or obtained specific video materials or services. Plaintiff alleges that "[w]hen a

16   visitor watches a video on evergreenhills.cm while logged into Facebook, Defendants compel a

17   visitor's browser to transmit the c_user cookie to Facebook. The c_user cookie contains that

18   visitor's unencrypted Facebook ID." (Compl ¶ 25 (emphasis added).) Plaintiff then goes on to

19   allege that a "Facebook ID is personally identifiable information. Anyone can identify a Facebook

20   profile—and all personal information publicly listed on that profile—by appending the Facebook

21   ID to the end of Facebook.com." (Compl. ¶ 29.) However, these allegations fail to allege that Chick-

22   fil-A sends PII for two distinct reasons.

23       **First**, an FID itself is not PII. "[T]he ***information disclosed*** by a video tape service provider

24   must, ***at the very least, identify a particular person***—not just an anonymous individual—and

25   connect this particular person with his or her viewing history." *Robinson*, 152 F. Supp. 3d at 179

26   (emphasis added). The FID is an anonymized ID number and does not contain a name, address,

27   email, or other information that, when read alone, identifies a person. (Compl. ¶ 25, Figure 6

28

- 7 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

(showing Facebook ID "100087271304389" associated with "c_user" cookie).) Rather, as Plaintiff alleges, a person would need to enter it into Facebook's website to find out more information about a person. (Compl. ¶ 29.) This is the exact kind of "extra step" that several courts have found to be outside the realm of PII. In *Robinson*, for example, plaintiff argued that Disney violated the VPPA when Disney shared plaintiff's viewing history along with an anonymized serial number to a third party (Adobe), and that this disclosure constituted PII because Adobe could identify plaintiff by "linking these disclosures with existing personal information obtained elsewhere." *Robinson*, 152 F. Supp. 3d at 180 (internal quotations omitted). The *Robinson* court, citing to and consistent with the overwhelming authority across the country, rejected this argument and held the information actually disclosed "***must itself do the identifying that is relevant for purposes of the VPPA (literally, 'information which identifies')—not information disclosed by a provider, plus other pieces of information collected elsewhere by non-defendant third parties***." *Id.* at 182 (emphasis added).[1]

In rejecting an expansive view of PII, *Robinson* explained: "If nearly any piece of information can, with enough effort on behalf of the recipient, be combined with other information so as to identify a person, then the scope of PII would be limitless." *Id.* at 181. The court held "Disney's liability turn[ed] only on whether the information it disclosed itself identified a specific person. It did not. Thus, Adobe's ability to identify Robinson by linking this disclosure with other information is of little significance." *Id.* at 184 (emphasis added). The information that Plaintiff

---

[1] *See also id.* at 180 (collecting cases, including *In re Nickelodeon Consumer Privacy Litig.*, 2014 WL 3012873, at *10 (D.N.J. July 2, 2014) ("[PII is] information which must, without more, itself link an actual person to actual video materials."); *Ellis v. Cartoon Network, Inc.*, 2014 WL 5023535, at *3 (N.D. Ga. Oct. 8, 2014), *aff'd on other grounds*, 803 F.3d 1251 (11th Cir.2015) (PII not disclosed where the third party to whom an Android ID and viewing history were provided had to "collect information from other sources" to identify the plaintiff*); Locklear v. Dow Jones & Co.*, 101 F. Supp. 3d 1312, 1318 (N.D. Ga. 2015), *abrogated on other grounds*, 803 F.3d 1251 (11th Cir.2015) ("[A] Roku serial number, without more, is not akin to identifying a particular person, and therefore, is not PII.") (quotations omitted); *Eichenberger v. ESPN, Inc.*, C14–463, 2015 WL 7252985 (W.D. Wash. May 7, 2015) (allegation that Adobe "used information gathered from other sources to link plaintiff's Roku device serial number and the record of what videos were watched to plaintiff's identity" failed to state a claim for disclosure of PII under the VPPA)).

- 8 -

alleges Chick-fil-A shares is not PII because an FID is only a string of numbers—here, "100087271304389" (Compl. ¶ 25 Figure 6)—and does not itself identify a specific person.

*Second*, Plaintiff does not allege that Chick-fil-A *itself* sends the FID information. Rather, Plaintiff specifically alleges that "[w]hen a visitor watches a video on evergreenhills.com while logged into Facebook, Defendants compel ***a visitor's browser*** to transmit the c user cookie to Facebook." (Compl. ¶ 25.) This conclusory allegation is unsupported by any facts to show that Chick-fil-A *is the one that transmits* the FID—and in fact, expressly admits that the "visitor's browser" transmits the information. Plaintiff further alleges the "c_user" field is a cookie (*see* Compl. ¶ 28 ("Facebook, at a minimum, uses the fr and c_user cookies to link to Facebook IDs and corresponding Facebook profiles.")), and case law describing how cookies work also show that Plaintiff's own browser, not Chick-fil-A, sends this information.

Indeed, *In re Facebook, Inc. Internet Tracking Litig.* explains that "[w]hen a user creates a Facebook account, more than ten Facebook cookies are placed on the user's browser. These cookies store the user's login ID [FID], and they capture, collect, and compile the referer headers from the web pages visited by the user. As most relevant to this appeal, these cookies allegedly continued to capture information after a user logged out of Facebook and visited other websites." 956 F.3d 589, 596 (9th Cir. 2020), *cert. denied sub nom. Facebook, Inc. v. Davis*, 209 L. Ed. 2d 464, 141 S. Ct. 1684 (2021); *see also In re Meta Pixel Healthcare Litig.*, No. 22-cv-03580, 2022 WL 17869218 at *4 (Dec. 22, 2022, N.D. Cal. 2022) ("Cookies are "small pieces of text used to store information on web browsers."); *Mount v. PulsePoint, Inc.*, No. 13 CIV. 6592 (NRB), 2016 WL 5080131, at *1-2 (S.D.N.Y. Aug. 17, 2016), aff'd, 684 F. App'x 32 (2d Cir. 2017), as amended (May 3, 2017) ("Persistent cookies, commonly called "tracking cookies," are designed to remain after the user moves on to a different website or even after the browser is closed. Persistent cookies are set by third parties, including advertising companies that have placed ads on the first-party website. By reading and matching tracking cookies they have placed on a user's device, third-party advertising companies can create digital profiles of internet users based on their browsing activities."). Moreover, a "cookie" as defined by Merriam-Webster's dictionary is "a small file or part of a file

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 9 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

stored on a World Wide Web user's computer, created and subsequently read by a website server, and containing personal information (such as a user identification code, customized preferences, or a record of pages visited)." *See* "Cookie" (df. 3) (https://www.merriam-webster.com/dictionary/cookie) (last visited February 5, 2023.

Therefore, Plaintiff's own allegations, the definition of a "cookie," and case law discussing third-party Facebook cookies all make clear that ***Plaintiff's FID is stored on Plaintiff's browser***, not by Chick-fil-A, and is subsequently sent to Facebook by Plaintiff's own browser. Therefore, even if this Court finds that FIDs are PII (which they are not), Chick-fil-A is not the one that transmits the FIDs to Facebook—Plaintiff's browser through Facebook's third-party cookies do so. (*See* FAC ¶ 28.)

Plaintiff fails to allege Chick-fil-A discloses any other PII, such as his name, to Facebook. Rather, his claim relies solely on the alleged transmission of his FID to Facebook—which, as explained above, is (1) a string of numbers that do not on their own identify individuals and (2) something transmitted by Plaintiff's own browser because Plaintiff has given Facebook consent to collect such information. *See In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218 at *5 ("Meta gives users the ability to control the use of information about their off-Facebook activity (such as activity on third-party websites) for advertising purposes" and "Users can 'disconnect' the off-Facebook activity that has been associated with their account—which prevents the data from being used for personalized advertising"). Because Plaintiff's allegations demonstrate that Plaintiff's FID is transmitted by his own website browser—not by Chick-fil-A—and because he does not allege that Chick-fil-A discloses any other PII to Facebook, Plaintiff fails to allege that Chick-fil-A discloses PII.

### E. Plaintiff Does Not Allege That Chick-fil-A *Knowingly* Disclosed PII.

Plaintiff does not allege facts demonstrating that Chick-fil-A *knowingly* disclosed Plaintiff's or the putative class's PII. As described *supra* § I(D), Chick-fil-A does not disclose PII at all. Moreover, Plaintiff does not allege that Chick-fil-A has any way to know whether Plaintiff—or any users—had FIDs, much less what those FIDs were, whether Plaintiff set his browser to allow

- 10 -

Facebook cookies, or whether any Facebook profile contained PII. Therefore, there was no way for Chick-fil-A to know whether Plaintiff even had an FID, much less whether he allowed it to be shared back to Facebook, or whether his Facebook profile contained PII. Plaintiff does not allege, nor could he allege, that Chick-fil-A knowingly disclosed his PII to Facebook.

## II.    THE VPPA IS FACIALLY UNCONSTITUTIONAL.

The VPPA is facially unconstitutional because it is an overbroad restraint on commercial speech. The First Amendment states, "Congress shall make no law … abridging the freedom of speech." U.S. Const. amend. I. As the U.S. Supreme Court reiterated, "information is not in itself harmful…" *IMS Health, Inc. v. Sorrell*, 564 U.S. 552, 578 (2011). "Facts, after all, are the beginning point for much of the speech that is most essential to advance human knowledge and to conduct human affairs." *Id.* at 570. Restrictions on access to information in private hands, such as customer data, violates the First Amendment. *Id.* at 577-79; *see also U.S. West, Inc. v. FCC*, 182 F.3d 1224 (10th Cir. 1999). In *IMS Health*, the U.S. Supreme Court held that a Vermont statute violated the First Amendment where the statute purported to restrict pharmacies from selling retained information about drug prescribing habits of doctors to pharmaceutical companies for marketing purposes. *IMS Health*, 564 U.S. at 577-79. Specifically, the Court explained that:

…Vermont has imposed a restriction on access to information in private hands….[W]e do have "a case in which the government is prohibiting a speaker from conveying information that the speaker already possesses." The difference [between that and government information] is significant. An individual's right to speak is implicated when information he or she possesses is subjected to "restraints on the way in which the information might be used" or disseminated.

*Id.* at 568.

In *U.S. West*, the Tenth Circuit held that an FCC regulation violated the First Amendment where such regulation restricted telecommunication carriers from using customer information "that is made available to the carrier by the customer solely by virtue of the carrier-customer relationship." *U.S. West*, 182 F.3d 1224. Specifically, the FCC regulation prohibited carriers from

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

using the customer information to market services to those customers who did not already subscribe unless the customer opted in and gave affirmative approval to the carrier. *Id.* at 1230. The FCC contested that the regulation did not affect "speech" because it only regulated the use of data. *Id*. at 1232. The Court, however, rejected this argument and held that regulation did restrict speech because it made speech more difficult by limiting the ability of carriers to target their speech to a particular audience. *Id*. The Court recognized that "the existence of alternative channels of communication, such as broadcast speech, does not eliminate the fact that the … regulations restrict speech." *Id.*

Like the information at issue in *IMS Health* and *U.S. West*, the information at issue in this case – "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider" – is commercial speech. As such, any restriction on that speech must meet three conditions in order to survive: (1) the government must have a "substantial interest in regulating the speech," (2) the regulation must "directly and materially advance[ ] that interest," and (3) the regulation must be "no more extensive than necessary to serve the interest." *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York,* 447 U.S. 557, 566 (1980). In addition, the VPPA's "language may not be unconstitutionally vague or its prohibitions too broad in their sweep, failing to distinguish between conduct that may be proscribed and conduct that must be permitted." *Broadrick v. Oklahoma*, 413 U.S. 601, 607 (1973). The VPPA does not meet any of these conditions.

**A.  The VPPA Is Unconstitutionally Vague And Overbroad.**

First, the VPPA is unconstitutionally vague and overbroad. The VPPA is unconstitutionally vague and overbroad as written because it regulates "any person, engaged in the business . . . of rental, sale or delivery of prerecorded video cassette tapes or similar audio visual materials" from knowingly disclosing "to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(a)-(b). Plaintiffs are interpreting this statute as applicable to a broad range of persons and entities that should not be regulated by the VPPA. As the Supreme Court has held, a statute is overbroad and, "[l]itigants are permitted to challenge a statute . . .

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1   because of a judicial prediction or assumption that the statute's very existence may cause others not

2   before the court to refrain from constitutionally protected speech or expression." *Broadrick*, 413

3   U.S. at 612. Here, the VPPA's existence has caused, and will continue to cause, others not before

4   this Court to refrain from the constitutionally protected commercial speech regulated by the VPPA.

5   This is because VPPA litigation has exploded in recent years, with companies who are nothing

6   close to the "video-tape service provider" that Congress intended to regulate when passing the

7   VPPA, being named as defendants.[2]   Indeed, this lawsuit against a **quick-service restaurant**

8   **franchise system** is perhaps among the most egregious examples of plaintiffs attempting to stretch

9   the definition of "video-tape service provider" to absurd extremes.

10          These companies are being sued because the language of the VPPA is so vague and

11   overbroad that plaintiffs are interpreting it to allow suit even if *just a single video is placed on a*

12   *website and viewed*, as this case proves. This is in part because the words "business" and "delivery"

13   are undefined in the statute, but their dictionary definitions are overly broad. Indeed, "business" is

14   defined as "a usually commercial or mercantile activity engaged in as a means of livelihood" or "a

15   commercial or sometimes an industrial enterprise" ("business" (def. 1a, 1b), https://www.merriam-

16   webster.com/dictionary/business), while "delivery" is  defined as "the act or manner of delivering

17   something." *See* "delivery" (def. 1),  https://www.merriam-webster.com/dictionary/delivery; s*ee*

18   *also* "delivery" (def. 5),  https://www.dictionary.com/browse/delivery (defined as "the act or

19   manner of giving or sending forth.").

20          Based on these overly broad, undefined words, plaintiffs are attempting to bring VPPA

21   claims against virtually *any entity* that has a video on its website, taking Congress' intention to

22   regulate video tape service providers, such as the video store rental companies contemplated in the

23   legislative history, to no end. The VPPA is vague and overbroad because there is no curtailment to

24   _____

25   [2] Indeed, since 2022 alone, over 100 complaints alleging violations of the VPPA have been filed
    against defendants from all sectors and industries, who simply provide videos on their websites
26   such as Hallmark Cards, Inc., NBCUniversal Media, LLC (owner of Today.com), Intuit, Gannett
    Company, Inc. (largest newspaper publisher in the U.S.), Weight Watchers, The Philadelphia
27   Inquirer, the National Football League (d/b/a the NFL), Major League Baseball Advanced Media
    L.P., La-Z-Boy, and Equifax, Inc., just to name a few.

28                                          - 13 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

the definition of a "video tape service provider" necessary to exclude those persons who merely provide videos on websites, but whose primary purpose is not to sell, rent, or deliver audio visual materials.

Rather, plaintiffs have interpreted the VPPA to apply to entities such as ***quick-service restaurant franchise systems***, as we can see from this very lawsuit, and the number and breadth of VPPA claims brought against companies from all industries, described above. Seeing that the VPPA is actively being interpreted far too broadly proves that the language of the VPPA "fail[s] to distinguish between conduct that may be proscribed and conduct that must be permitted" and that it likely "cause[s] others not before the court to refrain from constitutionally protected speech." *Broadrick*, 413 U.S. at 612. This is because, based on a definition of "video tape service provider" as a "business" that "rents, sells, or delivers" audio visual materials, persons in any and all sectors, including restaurants, beauty stores, government entities, *etc*. may refrain from otherwise legal conduct (*i.e*. sharing user information with third parties as permitted by other applicable statutes) in fear that they will fall under the VPPA's purview. Therefore, the VPPA is unconstitutionally overbroad.

**B.** **The Government Has No Substantial Interest In Restricting Disclosure Of Identifying Information With Video Watch Information.**

Next, even if the VPPA was not unconstitutionally vague and overbroad, the government does not have a "substantial interest" in restricting disclosure of "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." As the Supreme Court explained, "without persuasive evidence that a novel restriction on content is part of a long (if heretofore unrecognized) tradition of proscription, a legislature may not revise the judgment [of] the American people, embodied in the First Amendment, that the benefits of its restrictions on the Government outweigh the costs." *Brown v. Entertainment Merchants Assoc*., 564 U.S. 786, 792 (2011). There is no "persuasive evidence" that restrictions on this information imposed under section 2710 are "part of a long tradition of proscription." *Id.*

- 14 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**C.  The VPPA's Requirements Do Not Directly and Materially Advance The Government's Interest.**

Third, if the government does have a "substantial" interest to prevent the disclosure of the information protected by the VPPA, the onerous notice and consent process in section 2710—which includes, *inter alia*, consent for disclosure to be collected "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer"—does not "directly and materially advance[ ] that interest." To do so, "[t]here must be a 'fit between the legislature's ends and the means chosen to accomplish those ends.'" *IMS Health*, 564 U.S. at 572 (quoting *Bd. of Trustees of State Univ. of New York v. Fox*, 492 U.S. 469, 480 (1989)). "These standards ensure not only that the State's interests are proportional to the resulting burdens placed on speech but also that the law does not seek to suppress a disfavored message." *Id.*

Section 2710's onerous notice and consent requirements do not materially advance any interest because other forms of disclosure and consent—such as providing information about privacy practices in a Privacy Policy—are equally effective to ensure consumers know they are providing their information and voluntarily do so.

**D.  The VPPA's Requirements Are Far More Extensive Than Necessary To Serve Any Government Interest.**

The VPPA's requirements are far more extensive than necessary to serve any government interest. Requiring "informed, written consent (including through an electronic means using the Internet) of the consumer that – (i) is in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer; (ii) at the election of the consumer that—(I) is given at the time the disclosure is sought; or (II) is given in advance for a set period of time, not to exceed 2 years or until consent is withdrawn by the consumer, which is sooner; and (III) the video tape service provider has provided an opportunity, in a clear and conspicuous manner, for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election" is far "more extensive than necessary to serve the interest" of preventing disclosure.  As the Sixth Circuit noted in *Daniel v. Cantrell*, "[j]ust because Congress' goal was to

- 15 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1  prevent the disclosure of private information, does not mean that Congress intended the

2  implementation of every conceivable method of preventing disclosures." 375 F.3d 377, 383-384

3  (6th Cir. 2004). As the court explained, converting the information to "hieroglyphics" would also

4  protect the information, but would be more extensive than necessary.  Requiring consent to be in a

5  stand-alone form, separate from any other financial or legal obligation; to re-obtain a consumer's

6  consent at a minimum, every two years; and to give consumers the opportunity to withdraw consent

7  "on a case-by-case basis", is even more extensive, because it restricts the holder of the information

8  not only from disclosing the information, but also from using the information for completely legal

9  purposes, *i.e.* marketing and advertising.

10  ### III.    THE VPPA, AS APPLIED, VIOLATES THE FIRST AMENDMENT.

11      As described *supra* § II, the VPPA is vague and overbroad because it fails to provide a

12  curtailed definition of what constitutes a "video tape service provider." Rather than make clear the

13  types of entities regulated by the statute, the statute is being interpreted to allow for regulation of

14  any "business" that "delivers" audio visual materials. Therefore, the VPPA, as applied to Chick-

15  fil-A is far too vague and overbroad because, pursuant to the definition of a VTSP, Chick-fil-A is

16  potentially subject to the VPPA as a "video tape service provider" and prohibited from sharing

17  otherwise legal commercial information with third-parties, as is common in all commercial

18  industries, even though Chick-fil-A is nothing like the "video rental store" contemplated by

19  Congress when enacting the VPPA.

20  ### <u>CONCLUSION</u>

21      For the foregoing reasons, Chick-fil-A respectfully requests that this Court dismiss

22  Plaintiff's Class Action Complaint with prejudice pursuant to Federal Rule of Civil Procedure

23  12(b)(6), and for all further and other relief as this Court deems just.

24

25  Dated:    March 27, 2023                Respectfully submitted,

26

27                                          BAKER & HOSTETLER LLP

28  - 16 -

1

2          By:    /s/Bethany G. Lukitsch
                  Bethany G. Lukitsch (314376)
3                 Email: blukitsch@bakerlaw.com

4          Attorneys for Defendant
           CHICK-FIL-A, INC.,
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 17 -