Bethany G. Lukitsch (314376)
BAKER & HOSTETLER LLP
11601 Wilshire Boulevard
Suite 1400
Los Angeles, CA  90025-0509
Telephone:    310.820.8800
Facsimile:    310.820.8859
Email:        blukitsch@bakerlaw.com

Attorneys for Defendant
CHICK-FIL-A, INC.

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KEITH CARROLL, REBEKA RODRIGUEZ, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>CHICK-FIL-A, INC., and DOES 1 through 10, inclusive,<br><br>　　　　　　Defendant. | **Case No.: 4:23-cv-00314-YGR**<br><br>**NOTICE OF MOTION AND RULE 12(B)(6) MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[*Filed Concurrently with [Proposed] Order; Fed. R. Civ. P. 5.1 and Civil L.R. 3-8 Notice of Constitutional Question]*<br><br>Date:  June 27, 2023<br>Time: 2:00 p.m. |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**TO THE HONORABLE COURT, AND TO PLAINTIFF AND HIS COUNSEL OF RECORD HEREIN:**

**PLEASE TAKE NOTICE THAT** on June 27, 2023 at 2:00 p.m. or as soon thereafter as counsel may be heard, in Courtroom 1 – 4th Floor, of the United States District Court, Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, Defendant Chick-fil-A, Inc. ("Chick-fil-A") will and hereby does move this Court for an Order granting Chick-fil-A's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint.

This Motion is made pursuant to Fed. R. Civ. P. 12(b)(6) for Plaintiffs' failure to state a claim upon which relief may be granted. Specifically, Plaintiffs fails to state a claim under the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, because they fail to allege that Chick-fil-A is a "video tape service provider" regulated by the VPPA, that Plaintiffs are consumers protected by the VPPA, or that Chick-fil-A shared Plaintiffs' personally identifiable information in violation of the VPPA. Further, the VPPA violates the First Amendment to the U.S. Constitution, both on its face and as applied to Chick-fil-A. Chick-fil-A's motion is based on this Notice of Motion, the supporting Memorandum of Points and Authorities, the pleadings and papers on file in this action, and upon such further argument and evidence as may be presented prior to or at the hearing of this Motion.

Chick-fil-A has asked Plaintiff Rebeka Rodriguez to provide information which would allow Chick-fil-A to determine whether Plaintiff Rodriguez has agreed to individually arbitrate her claims. To date, Plaintiff Rodriguez has refused to provide that information, and Chick-fil-A plans to file a motion to compel her to provide that information if she continues to refuse to do so voluntarily. Chick-fil-A reserves all rights to compel Plaintiff Rodriguez to individually arbitrate her claims if Chick-fil-A receives information confirming that Plaintiff Rodriguez is subject to an individual arbitration agreement. In the event that Plaintiff Rodriguez's claims are arbitrable, this Motion to Dismiss is brought with respect to only Plaintiff Keith Carroll's claims.

- 2 -

NOTICE OF MOTION AND RULE 12(B)(6) MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO.: 3:23-CV-00314-YGR
4872-5198-6781.3

1

Dated: April 18, 2023

Respectfully submitted,

2

**BAKER & HOSTETLER LLP**

3

By:      /s/*Bethany G. Lukitsch*

4

Bethany G. Lukitsch (314376)

5

Email: blukitsch@bakerlaw.com

6

7

Attorneys for Defendant

CHICK-FIL-A, INC.,

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................... 1

BACKGROUND .................................................................................................... 2

ARGUMENT ......................................................................................................... 4

I.      PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF THE
        VPPA. ....................................................................................................... 4

        A.      Standard of Law. ............................................................................. 4

        B.      Plaintiffs Do Not Allege Chick-fil-A Is A Video Tape Service
                Provider. .......................................................................................... 4

        C.      Plaintiffs Do Not Allege They Are "Consumers" Protected By The
                VPPA. .............................................................................................. 6

        D.      Plaintiffs Do Not Allege That Chick-fil-A Disclosed PII. ............. 7

        E.      Plaintiffs Do Not Allege That Chick-fil-A *Knowingly* Disclosed PII. ...... 12

II.     THE VPPA IS FACIALLY UNCONSTITUTIONAL. ................................... 12

        A.      The VPPA Is Unconstitutionally Vague And Overbroad. ........... 14

        B.      The Government Has No Substantial Interest In Restricting Disclosure
                Of Identifying Information With Video Watch Information. .................. 16

        C.      The VPPA's Requirements Do Not Directly and Materially Advance
                The Government's Interest. ............................................................. 16

        D.      The VPPA's Requirements Are Far More Extensive Than Necessary
                To Serve Any Government Interest. ............................................... 17

III.    THE VPPA, AS APPLIED, VIOLATES THE FIRST AMENDMENT. ............. 17

CONCLUSION ..................................................................................................... 18

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- i -

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...................................................................................... 4

*Austin-Spearman v. AMC Network Ent. LLC,*
    98 F. Supp. 3d 662 (S.D.N.Y. 2015) ....................................................... 6, 7

*Bd. of Trustees of State Univ. of New York v. Fox,*
    492 U.S. 469 (1989) .................................................................................... 16

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ...................................................................................... 4

*Broadrick v. Oklahoma,*
    413 U.S. 601 (1973) ............................................................................. 14, 15

*Brown v. Entertainment Merchants Assoc.,*
    564 U.S. 786 (2011) .................................................................................... 16

*Central Hudson Gas & Electric Corp. v. Public Service Commission of New York,*
    447 U.S. 557 (1980) .................................................................................... 13

*Daniel v. Cantrell,*
    375 F.3d 377 (6th Cir. 2004) ...................................................................... 17

*Eichenberger v. ESPN, Inc.,*
    C14–463, 2015 WL 7252985 (W.D. Wash. May 7, 2015) ........................... 9

*Ellis v. Cartoon Network, Inc.,*
    2014 WL 5023535 (N.D. Ga. Oct. 8, 2014), *aff'd on other grounds*, 803 F.3d
    1251 (11th Cir.2015) ..................................................................................... 9

*Ellis v. Cartoon Network, Inc.,*
    803 F.3d 1251 (11th Cir. 2015) ............................................................... 6, 7

*In re Facebook, Inc. Internet Tracking Litig.,*
    956 F.3d 589 (9th Cir. 2020), *cert. denied sub nom. Facebook, Inc. v. Davis,*
    209 L. Ed. 2d 464, 141 S. Ct. 1684 (2021) ............................................... 10

*In re Hulu Priv. Litig.,*
    No. C 11-03764 LB, 2012 WL 3282960 (N.D. Cal. Aug. 10, 2012) ........... 5

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- ii -

*IMS Health, Inc. v. Sorrell*,
564 U.S. 552 (2011) ................................................................................... 12, 13, 16

*Locklear v. Dow Jones & Co.*,
101 F. Supp. 3d 1312 (N.D. Ga. 2015), *abrogated on other grounds*, 803 F.3d
1251 (11th Cir.2015) ........................................................................................ 9

*In re Meta Pixel Healthcare Litig.*,
No. 22-cv-03580, 2022 WL 17869218 (Dec. 22, 2022, N.D. Cal. 2022) ....................... 10, 11

*Mount v. PulsePoint, Inc.*,
No. 13 CIV. 6592 (NRB), 2016 WL 5080131 (S.D.N.Y. Aug. 17, 2016), *aff'd*,
684 F. App'x 32 (2d Cir. 2017) ......................................................................... 11

*In re Nickelodeon Consumer Privacy Litig.*,
2014 WL 3012873 (D.N.J. July 2, 2014) ............................................................... 9

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016) .............................................................................. 7

*Perry v. Cable News Network, Inc.*,
854 F.3d 1336 (11th Cir. 2017) ......................................................................... 7

*Robinson v. Disney Online*,
152 F. Supp. 3d 176 (S.D.N.Y. 2015) ............................................................ 7, 8, 9

*U.S. West, Inc. v. FCC*,
182 F.3d 1224 (10th Cir. 1999) .................................................................. 12, 13

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ................................................................ 5

## Statutes

18 U.S.C. § 2710 ....................................................................................... *passim*

18 U.S.C. § 2710(a)(1) ................................................................................... 6

18 U.S.C. § 2710(a)(3) ................................................................................... 8

18 U.S.C. § 2710(a)(4) ................................................................................... 4

18 U.S.C. § 2710(a)-(b) ................................................................................ 14

## Rules

Fed. R. Civ. P. 12(b)(6) ........................................................................... 1, 4, 18

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- iii -

1

**Other Authorities**

134 Cong. Rec. H10409-01, 1988 WL 178796 ................................................................. 7

S.Rep. No. 100–599 ........................................................................................................... 5

U.S. Const. amend. I ...................................................................................................... 2, 12

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- iv -

**INTRODUCTION**

A quick-service restaurant franchise system is not a video tape service provider. The Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), passed to address a video rental store's disclosure of Judge Robert Bork's video rental history to the media without his knowledge and consent, applies only to a "person, ***engaged in the business***, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." Plaintiffs seek to assert a single claim under the VPPA. That is where this case should end.

Chick-fil-A, Inc. ("Chick-fil-A") operates a franchise system of retail quick-service restaurants specializing in a boneless breast of chicken sandwich. Most Chick-fil-A brand restaurant businesses are owned and operated by independent franchisees. Chick-fil-A also operates various Chick-fil-A and other restaurants itself from time to time and may do so in the future directly or through its affiliates and subsidiaries. Chick-fil-A operated a free public website at www.evergreenhills.com (the "Evergreen Website") and currently operates the free public website, www.chick-fil-a.com (the "Chick-fil-A Website", collectively with the Evergreen Website, the "Websites"). Plaintiff Keith Carroll ("Carroll") alleges that he watched a video on the Evergreen Website and that "[w]hen a visitor watches a video on the www.evergreenhills.com Website while logged into Facebook, Defendant knowingly compels a visitor's browser to transmit the c_user cookie to Facebook. The c_user cookie contains that visitor's unencrypted Facebook ID." (First Amended Complaint ("FAC"), ¶¶ 6, 25.) Plaintiff Rebeka Rodriguez ("Rodriguez" collectively with Carroll ("Plaintiffs"), alleges that she watched a video on the Chick-fil-A Website, that Chick-fil-A "has Google Analytic/Google Tag Manager enabled on" that website, and that "[w]henever the video is played, data is sent to Google that logs detailed information about the video viewed. This data includes the page title, video location, and the _gid cookie." (FAC, ¶¶ 7, 41, 42.) Plaintiffs now bring this First Amended Class Action Complaint asserting one count for Chick-fil-A's alleged violation of the VPPA. Plaintiffs' claim, however, fails to state a claim upon which relief can be granted and, accordingly, should be dismissed pursuant to Rule 12(b)(6).

- 1 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

First, Plaintiffs fail to allege that Chick-fil-A is a "video-tape service provider" ("VTSP") under the VPPA. This is because not only is Chick-fil-A not *engaged in the business of* delivering video materials, but Chick-fil-A's business is nothing like the brick and mortar video rental store intended to be regulated by the VPPA. Second, Plaintiffs fail to allege that  they are "consumers" protected by the VPPA because Plaintiffs have not purchased, rented, or subscribed to any video-tape goods or services provided by Chick-fil-A. Third, Plaintiffs fail to allege that Chick-fil-A disclosed Plaintiffs' personally identifiable information ("PII") to Facebook or Google, let alone knowingly disclosed the information, but rather specifically alleges that Plaintiffs' own browser, through the use of cookies, disclosed any information. Fourth, the VPPA is an unconstitutional restraint on commercial speech in violation of the First Amendment of the U.S. Constitution.

Plaintiffs have not stated a claim upon which relief can be granted and, accordingly, Plaintiffs' First Amended Class Action Complaint should be dismissed in its entirety, with prejudice.

## BACKGROUND

Plaintiff Carroll filed his putative Class Action Complaint against Chick-fil-A on January 22, 2023, alleging one count for violation of the VPPA (the "Complaint"). Chick-fil-A filed a 12(b)(6) Motion to Dismiss Plaintiff's Complaint on March 24, 2023. Plaintiffs then filed this putative First Amended Class Action Complaint on April 4, 2023 alleging one count for violation of the VPPA (the "First Amended Complaint"). Specifically, Plaintiffs allege that Chick-fil-A "is a 'video tape service provider' because it 'hosts, and delivers videos on the Websites.'" (FAC ¶ 65.) Plaintiffs allege that they are "consumers" under the VPPA as "purchasers" because "Plaintiffs have purchased and eaten at Defendant's restaurant before" and as "subscribers" because they have "downloaded Defendant's mobile application onto their smartphone devices, which established Plaintiffs' seamless access to Defendant's Websites and its products." (FAC ¶¶ 50-51.)

Plaintiff Carroll alleges that Chick-fil-A's Evergreen Website used the Meta Pixel, and that the Pixel sent information about videos that Plaintiff Carroll watched on the website to Facebook. (FAC ¶¶ 17-35.) Plaintiff Carroll further alleges that "[w]hen a visitor watches a video on the

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

www.evergreenhills.com Website while logged into Facebook, Defendant knowingly compels a visitor's browser to transmit the c_user cookie to Facebook. The c_user cookie contains that visitor's unencrypted Facebook ID. When accessing the above video, for example, Defendant compelled the browser to send numerous cookies." (FAC ¶ 25.) Plaintiff Carroll alleges that by doing so, Chick-fil-A disclosed personally identifiable information ("PII") to Facebook because "anyone can identify a Facebook profile—and all personal information publicly listed on that profile—by appending the Facebook ID to the end of Facebook.com." (FAC ¶ 29.)

Plaintiff Rodriguez alleges that the Chick-fil-A Website uses Google Analytics, that she played a video on that website, and that "[w]henever the video is played, data is sent to Google that logs detailed information about the video viewed. This data includes the page title, video location, and the _gid cookie." (FAC, ¶¶ 7, 41, 42, 46.) Plaintiff Rodriguez does *not* allege that Google or anyone else can identify her based on the _gid cookie or any other information that is allegedly transmitted. (*See generally* FAC ¶¶ 36-46.)

Plaintiffs allege that Chick-fil-A violated the VPPA by sending the above-described information to Facebook and Google through the Pixel and Google Analytics, respectively, without first obtaining Plaintiffs' informed written consent to disclose information about their video viewing behavior. (FAC ¶ 70.) Plaintiffs aim to represent a class of persons defined as, "[a]ll persons in the United States who are consumers under the VPPA who played video content on www.evergreenhills.com, www.chick-fil-a.com, or any other website owned, operated, or controlled by Defendant and whose PII was disclosed by Defendant to Facebook, Google or any third party during the two years preceding the filing of this action (the "Class Period")." (FAC ¶ 58.) On behalf of themselves and the putative class, Plaintiffs request (1) an order declaring that Chick-fil-A's conduct violates the VPPA and injunctive relief to stop the illegal conduct, (2) an award of statutory damages, (3) prejudgment interest on all amounts awarded, and (4) reasonable attorney's fees and other litigation costs. (FAC at pp. 21-22.)

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

### ARGUMENT

**I.     PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF THE VPPA.**

**A.  Standard of Law.**

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). A complaint may not rest on "'naked assertion' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

**B.  Plaintiffs Do Not Allege Chick-fil-A Is A Video Tape Service Provider.**

A VTSP is defined under the VPPA as "any person, ***engaged in the business***, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials . . . ." 18 U.S.C. § 2710(a)(4) (emphasis added). The First Amended Complaint contains no allegations regarding "prerecorded video cassette tapes," nor does it allege that Chick-fil-A is "engaged in the business" of rental, sale or delivery of "similar audio-visual materials."

This failure is not a mere pleading deficiency, but rather the result of the requirements imposed by the statutory language. "Business" is defined as "a usually commercial or mercantile activity engaged in as a means of livelihood." *See* "business" (def. 1a), https://www.merriam-webster.com/dictionary/business (last accessed March 11, 2023). "Livelihood" is defined as "means of support or subsistence." *See* "livelihood" (def. 1), https://www.merriam-webster.com/dictionary/livelihood (last accessed March 11, 2023). Thus, to be "engaged in the business" of a particular activity, that activity must be the company's "means of support or subsistence." As one court has explained, to be "engaged in the business…of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials," 18 U.S.C. §

- 4 -

2710(a)(4), "the defendant's product must not only be substantially involved in the conveyance of video content to consumers but also significantly tailored to serve that purpose." *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017). In other words, delivering video content must be "a focus of the defendant's work." *Id.* Businesses which are only "peripherally or passively involved in video content delivery do not fall within the statutory definition of a video tape service provider." *Id.* at 1221-22.

Chick-fil-A is not "***engaged in the business***" of providing video content. As Plaintiffs allege, Chick-fil-A operates a restaurant franchise system. (FAC ¶ 5 ("Defendant owns the Chick-fil-A brand of retail, quick-service restaurants"); *id.* ¶ 50 (referring to "Defendant's restaurant"); *id.* ¶¶ 1, 6, 7, 19, 35, 41, 45, 46) (incorporating by reference Chick-fil-A's Website which explains that Chick-fil-A is "[s]erving communities across the country with more than 2,400 restaurants") (https://www.chick-fil-a.com/about/who-we-are).) Simply making videos available on its website, as an incidental medium for promoting its CFA-branded restaurant businesses, does not make Chick-fil-A a business "engaged in" the rental, sale, or delivery of videos. *See In re Vizio*, 238 F. Supp. 3d at 1221 ("a defendant must be '***engaged in the business ... of ... delivery of*** video content . . .When used in this context, 'business' connotes 'a particular field of endeavor,' *i.e.,* a focus of the defendant's work.") (emphasis added). If this was the case, quite literally *any person* that provides video media in *any capacity* would fall under the definition of a VTSP. *See id.*

Furthermore, Plaintiffs do not allege that the videos on Chick-fil-A's Website are "similar audio-visual materials" to the "prerecorded video cassette tapes" covered by the VPPA. "Congress's concern with privacy and protecting the confidentiality of an individual's choices is relevant context to the Senate Report's discussion of 'similar audio visual materials, such as laser discs, open-reel movies, and CDI technologies.'" *In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2012 WL 3282960, at *6 (N.D. Cal. Aug. 10, 2012) (citing S.Rep. No. 100–599 at 12). The "similar" materials contemplated by Congress were the hours-long video recordings such as motion pictures ("open-reel movies") made available at the typical brick-and-mortar video stores that existed when Congress drafted the VPPA. *See also* laser disc (def. 1) (https://www.merriam-

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 5 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

webster.com/dictionary/laser%20disc) (last visited February 4, 2023) (defined as, "one containing a video recording (as of a motion picture)." Such types of "audio visual materials" *differ greatly* from the short and limited videos on Chick-fil-A's website. And Plaintiffs do not allege that Congress considered, let alone intended, to regulate businesses that distribute such short promotional clips.

In short, Chick-fil-A is not a VTSP because it is not "engaged in the business" of selling, renting, or delivering any video materials, nor are the promotional videos on its website "similar" to the "prerecorded video cassette tapes" covered by the statute. Rather, Chick-fil-A operates a franchise system of quick-service restaurants and is not a "video tape service provider" subject to the VPPA. Therefore, Plaintiffs' VPPA claim should be dismissed with prejudice.

### C.  Plaintiffs Do Not Allege They Are "Consumers" Protected By The VPPA.

The VPPA defines a "consumer" as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1) (emphasis added). Here, in an attempt to establish their status as "consumers," Plaintiffs allege only that they "downloaded Defendants' mobile application onto their smartphone devices, which established Plaintiffs' seamless access to Defendant's Websites" and have "purchased and eaten at Defendant's restaurant before."  (FAC ¶¶ 50-51.) Both of these allegations, however, fail to bring Plaintiffs within the definition of a "consumer" under the VPPA.

First, Plaintiffs' alleged download of Chick-fil-A's free app does not make Plaintiffs consumers under the VPPA. "[D]ownloading an app for free and using it to view content at no cost is not enough to make a user of the app a 'subscriber' under the VPPA, as there is no ongoing commitment or relationship between the user and the entity which owns and operates the app." *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1257 (11th Cir. 2015). *See also Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662, 669 (S.D.N.Y. 2015) ("Conventionally, 'subscription' entails an exchange between subscriber and provider whereby the subscriber imparts money and/or personal information in order to receive a future and recurrent benefit, whether that benefit comprises, for instance, periodical magazines, club membership, cable services, or email

- 6 -

updates."). Plaintiffs fail to allege any "ongoing commitment or relationship" between themselves and Chick-fil-A as a result of their download of the free app, and therefore, Plaintiffs have not alleged that they are "consumers" under the VPPA by virtue of their use of the app.

Second, Plaintiffs' allegations that they "have eaten at Defendant's restaurant before" does not make them "consumers" under the VPPA. Plaintiffs' alleged past purchase of food in a Chick-fil-A brand restaurant business is entirely disconnected from their alleged use of the website on which they allegedly viewed a video. In other words, Chick-fil-A's alleged provision of "video-tape services" through its website is entirely unrelated to Plaintiffs' alleged past purchase of food, and therefore, Plaintiffs are not "consumers" of a "video tape service provider" by virtue of their alleged purchase of food. *See Perry v. Cable News Network, Inc.,* 854 F.3d 1336, 1342-43 (11th Cir. 2017) (plaintiff was not "subscriber" of video content on free CNN app merely because he paid for cable TV separate from app which provided video materials); *Ellis*, 803 F.3d at 1257 (holding same); *Austin-Spearman*, 98 F. Supp. 3d at 671 (expressing doubt that "a plaintiff can constitute a subscriber under the VPPA if she subscribes only to a portion of the provider's services that are distinct and set apart from its provision of videos"). Indeed, the VPPA's legislative history makes clear that the statute should be restricted to only those products or services sold by VTSP's that involve video materials. *See* 134 Cong. Rec. H10409-01, 1988 WL 178796 (Rep. Kastenmeier) ("The definition of personally identifiable information includes the term "video" to make clear that simply because a business is engaged in the sale or rental of video materials or services ***does not mean that all of its products or services are within the scope of the bill***.") (emphasis added.) Therefore, as here, where a person allegedly uses products or services unrelated to an entity's rental, sale, or delivery of video materials, the person is not a consumer protected by the VPPA.

### D.  Plaintiffs Do Not Allege That Chick-fil-A Disclosed PII.

Unless a VTSP has provided notice and obtained consent, it is prohibited from "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider." 18. U.S.C. § 2710; *see also Robinson v. Disney Online*, 152 F. Supp. 3d 176, 179 (S.D.N.Y. 2015); *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 279 (3d Cir. 2016)

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 7 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

(same). The VPPA states that PII "includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). "[T]he information disclosed by a video tape service provider must, at the very least, identify a particular person—not just an anonymous individual—and connect this particular person with his or her viewing history." *Robinson*, 152 F. Supp. 3d at 179 (emphasis in original).

Plaintiffs do not adequately allege, and cannot allege, that Chick-fil-A disclosed that Plaintiffs requested or obtained specific video materials or services. Plaintiff Carroll alleges that "[w]hen a visitor watches a video on the www.evergreenhills.com Website while logged into Facebook, Defendant knowingly compels a visitor's browser to transmit the c_user cookie to Facebook. The c_user cookie contains that visitor's unencrypted Facebook ID." (FAC ¶ 25.) Plaintiff Carroll then go on to allege that a "Facebook ID is personally identifiable information. Anyone can identify a Facebook profile—and all personal information publicly listed on that profile—by appending the Facebook ID to the end of Facebook.com." (FAC ¶ 29.) Plaintiff Rodriguez alleges that www.chick-fil-a.com "has Google Analytic/Google Tag Manger enabled" and that "[w]henever the video is played, data is sent to Google that logs detailed information about the video viewed. This data includes the page title, video location, and the _gid cookie." (FAC ¶¶ 41-42.) However, these allegations fail to allege that Chick-fil-A sends PII for two distinct reasons.

***First***, a Facebook ID ("FID") or Google ID ("GID") itself is not PII. "[T]he ***information disclosed*** by a video tape service provider must, ***at the very least, identify a particular person***—not just an anonymous individual—and connect this particular person with his or her viewing history." *Robinson*, 152 F. Supp. 3d at 179 (emphasis added). The FID is an anonymized ID number and does not contain a name, address, email, or other information that, when read alone, identifies a person. (FAC ¶ 25, Figure 5 (showing Facebook ID "100087271304389" associated with "c_user" cookie).) Rather, as Plaintiff Carroll alleges, a person would need to enter it into Facebook's website to find out more information about a person. (FAC ¶ 29.) This is the exact kind of "extra step" that several courts have found to be outside the realm of PII. In *Robinson*, for

- 8 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

example, plaintiff argued that Disney violated the VPPA when Disney shared plaintiff's viewing history along with an anonymized serial number to a third party (Adobe), and that this disclosure constituted PII because Adobe could identify plaintiff by "linking these disclosures with existing personal information obtained elsewhere." *Robinson*, 152 F. Supp. 3d at 180 (internal quotations omitted). The *Robinson* court, citing to and consistent with the overwhelming authority across the country, rejected this argument and held the information actually disclosed "***must itself do the identifying that is relevant for purposes of the VPPA (literally, 'information which identifies')— not information disclosed by a provider, plus other pieces of information collected elsewhere by non-defendant third parties***." *Id.* at 182 (emphasis added).[1]

In rejecting an expansive view of PII, *Robinson* explained: "If nearly any piece of information can, with enough effort on behalf of the recipient, be combined with other information so as to identify a person, then the scope of PII would be limitless." *Id.* at 181. The court held "Disney's liability turn[ed] only on whether the information it disclosed itself identified a specific person. It did not. Thus, Adobe's ability to identify Robinson by linking this disclosure with other information is of little significance." *Id.* at 184 (emphasis added). The information that Plaintiff Carroll alleges Chick-fil-A shares is not PII because an FID is only a string of numbers—here, "100087271304389" (FAC ¶ 25 Figure 5)—and does not itself identify a specific person.

Plaintiff Rodriguez's claims concerning information allegedly sent to Google about her activity on www.chick-fil-a.com are even weaker than Plaintiff Carroll's claims concerning information allegedly sent to Facebook about his activity on www.evergreenhills.com. Plaintiff

---

[1] *See also id.* at 180 (collecting cases, including *In re Nickelodeon Consumer Privacy Litig.*, 2014 WL 3012873, at *10 (D.N.J. July 2, 2014) ("[PII is] information which must, without more, itself link an actual person to actual video materials."); *Ellis v. Cartoon Network, Inc.*, 2014 WL 5023535, at *3 (N.D. Ga. Oct. 8, 2014), *aff'd on other grounds*, 803 F.3d 1251 (11th Cir.2015) (PII not disclosed where the third party to whom an Android ID and viewing history were provided had to "collect information from other sources" to identify the plaintiff*); Locklear v. Dow Jones & Co.*, 101 F. Supp. 3d 1312, 1318 (N.D. Ga. 2015), *abrogated on other grounds*, 803 F.3d 1251 (11th Cir.2015) ("[A] Roku serial number, without more, is not akin to identifying a particular person, and therefore, is not PII.") (quotations omitted); *Eichenberger v. ESPN, Inc.*, C14–463, 2015 WL 7252985 (W.D. Wash. May 7, 2015) (allegation that Adobe "used information gathered from other sources to link plaintiff's Roku device serial number and the record of what videos were watched to plaintiff's identity" failed to state a claim for disclosure of PII under the VPPA)).

- 9 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Rodriguez alleges that www.chick-fil-a.com "has Google Analytic/Google Tag Manger enabled" and that "[w]henever the video is played, data is sent to Google that logs detailed information about the video viewed. This data includes the page title, video location, and the _gid cookie." (FAC ¶¶ 41-42.) Notably, Plaintiff Rodriguez entirely fails to allege that the GID is linked to her name in any way, or that Google or anyone else can identify her through the GID. Therefore, without allegations that the GID is personally identifiable information, Plaintiffs fail to allege a VPPA claim based on Chick-fil-A's alleged disclosure of GID's to Google. *See supra* fn.1 (collecting cases).

**Second,** Plaintiffs do not allege that Chick-fil-A *itself* sends the FID or GID information. Rather, in relation to the FID, Plaintiff Carroll specifically alleges that Chick-fil-A "compels *a visitor's browser to transmit* the c_user cookie to Facebook. The c_user cookie contains that visitor's unencrypted Facebook ID." (FAC ¶ 25 (emphasis added).) In relation to the GID, Plaintiff Rodriguez more vaguely alleges that, "data is sent to Google that logs detailed information about the video viewed." (FAC ¶ 42.)

These conclusory allegations are unsupported by any facts to show that Chick-fil-A *is the one that transmits* the FID or GID—and in fact, for the FID, Plaintiff Carroll expressly admits that the "visitor's browser" transmits the information. Plaintiffs further allege the "c_user" field and "_gid" field are cookies (*see* FAC ¶ 25 ("Defendant compelled the browser to send numerous cookies."); ¶ 42 (referencing the "_gid cookie")), and case law describing how cookies work also show that Plaintiffs' own browsers, not Chick-fil-A, sends this information.

Indeed, *In re Facebook, Inc. Internet Tracking Litig.* explains that "[w]hen a user creates a Facebook account, more than ten Facebook cookies are placed on the user's browser. These cookies store the user's login ID [FID], and they capture, collect, and compile the referer headers from the web pages visited by the user. As most relevant to this appeal, these cookies allegedly continued to capture information after a user logged out of Facebook and visited other websites." 956 F.3d 589, 596 (9th Cir. 2020), *cert. denied sub nom. Facebook, Inc. v. Davis*, 209 L. Ed. 2d 464, 141 S. Ct. 1684 (2021); *see also In re Meta Pixel Healthcare Litig.*, No. 22-cv-03580, 2022 WL 17869218 at *4 (Dec. 22, 2022, N.D. Cal. 2022) ("Cookies are "small pieces of text used to store information

- 10 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

on web browsers."); *Mount v. PulsePoint, Inc*., No. 13 CIV. 6592 (NRB), 2016 WL 5080131, at *1-2 (S.D.N.Y. Aug. 17, 2016), aff'd, 684 F. App'x 32 (2d Cir. 2017), as amended (May 3, 2017) ("Persistent cookies, commonly called "tracking cookies," are designed to remain after the user moves on to a different website or even after the browser is closed. Persistent cookies are set by third parties, including advertising companies that have placed ads on the first-party website. By reading and matching tracking cookies they have placed on a user's device, third-party advertising companies can create digital profiles of internet users based on their browsing activities."). Moreover, a "cookie" as defined by Merriam-Webster's dictionary is "a small file or part of a file stored on a World Wide Web user's computer, created and subsequently read by a website server, and containing personal information (such as a user identification code, customized preferences, or a record of pages visited)." *See* "Cookie" (df. 3) (https://www.merriam-webster.com/dictionary/cookie) (last visited February 5, 2023.

Therefore, Plaintiffs' own allegations, the definition of a "cookie," and case law discussing third-party Facebook cookies all make clear that ***Plaintiffs' FID and/or GID are stored on Plaintiffs' browsers***, not by Chick-fil-A, and are subsequently sent to Facebook or Google by Plaintiffs' own browsers. Therefore, even if this Court finds that FIDs and/or GIDs are PII (which they are not), Chick-fil-A is not the one that transmits the FIDs and GIDs—Plaintiffs' browsers through third-party cookies do so. (*See* FAC ¶¶ 25, 42.)

Plaintiffs fail to allege Chick-fil-A discloses any other PII, such as their name, to Facebook or Google. Rather, their claim relies solely on the alleged transmission of their FID to Facebook or GID to Google—which, as explained above, is (1) a string of numbers that does not on its own identify individuals and (2) something transmitted by Plaintiffs' own browsers. And with respect to the FID, Plaintiff Carroll has given Facebook consent to collect such information. *See In re Meta Pixel Healthcare Litig*., 2022 WL 17869218 at *5 ("Meta gives users the ability to control the use of information about their off-Facebook activity (such as activity on third-party websites) for advertising purposes" and "Users can 'disconnect' the off-Facebook activity that has been associated with their account—which prevents the data from being used for personalized

- 11 -

advertising"). Because Plaintiffs' allegations demonstrate that Plaintiffs' FID and/or GID is transmitted by their own website browsers—not by Chick-fil-A—and because they do not allege that Chick-fil-A discloses any other PII to Facebook or Google, Plaintiffs fail to allege that Chick-fil-A discloses PII.

### E. **Plaintiffs Do Not Allege That Chick-fil-A *Knowingly* Disclosed PII.**

Plaintiffs do not allege facts demonstrating that Chick-fil-A *knowingly* disclosed Plaintiffs' or the putative class's PII. As described *supra* § I(D), Chick-fil-A does not disclose PII at all. Moreover, Plaintiffs do not allege that Chick-fil-A has any way to know whether Plaintiffs—or any users—had FIDs or GIDs, much less what those FIDs or GIDs were, whether Plaintiffs set their browsers to allow Facebook or Google cookies, or whether any Facebook profile or Google account contained PII. Therefore, there was no way for Chick-fil-A to know whether Plaintiffs even had an FID or GID, much less whether they allowed it to be shared back to Facebook or Google, or whether their Facebook profile or Google account contained PII. Plaintiffs do not allege, nor could they allege, that Chick-fil-A knowingly disclosed their PII to Facebook or Google.

## II.   THE VPPA IS FACIALLY UNCONSTITUTIONAL.

The VPPA is facially unconstitutional because it is an overbroad restraint on commercial speech. The First Amendment states, "Congress shall make no law … abridging the freedom of speech." U.S. Const. amend. I. As the U.S. Supreme Court reiterated, "information is not in itself harmful…" *IMS Health, Inc. v. Sorrell*, 564 U.S. 552, 578 (2011). "Facts, after all, are the beginning point for much of the speech that is most essential to advance human knowledge and to conduct human affairs." *Id.* at 570. Restrictions on access to information in private hands, such as customer data, violates the First Amendment. *Id.* at 577-79; *see also U.S. West, Inc. v. FCC*, 182 F.3d 1224 (10th Cir. 1999). In *IMS Health*, the U.S. Supreme Court held that a Vermont statute violated the First Amendment where the statute purported to restrict pharmacies from selling retained information about drug prescribing habits of doctors to pharmaceutical companies for marketing purposes. *IMS Health*, 564 U.S. at 577-79. Specifically, the Court explained that:

- 12 -

…Vermont has imposed a restriction on access to information in private hands….[W]e do have "a case in which the government is prohibiting a speaker from conveying information that the speaker already possesses." The difference [between that and government information] is significant. An individual's right to speak is implicated when information he or she possesses is subjected to "restraints on the way in which the information might be used" or disseminated.

*Id.* at 568.

In *U.S. West*, the Tenth Circuit held that an FCC regulation violated the First Amendment where such regulation restricted telecommunication carriers from using customer information "that is made available to the carrier by the customer solely by virtue of the carrier-customer relationship." *U.S. West*, 182 F.3d 1224. Specifically, the FCC regulation prohibited carriers from using the customer information to market services to those customers who did not already subscribe unless the customer opted in and gave affirmative approval to the carrier. *Id.* at 1230. The FCC contested that the regulation did not affect "speech" because it only regulated the use of data. *Id.* at 1232. The Court, however, rejected this argument and held that regulation did restrict speech because it made speech more difficult by limiting the ability of carriers to target their speech to a particular audience. *Id.* The Court recognized that "the existence of alternative channels of communication, such as broadcast speech, does not eliminate the fact that the … regulations restrict speech." *Id.*

Like the information at issue in *IMS Health* and *U.S. West*, the information at issue in this case – "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider" – is commercial speech. As such, any restriction on that speech must meet three conditions in order to survive: (1) the government must have a "substantial interest in regulating the speech," (2) the regulation must "directly and materially advance[ ] that interest," and (3) the regulation must be "no more extensive than necessary to serve the interest." *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York,* 447 U.S. 557, 566 (1980). In addition, the VPPA's "language may not

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 13 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

be unconstitutionally vague or its prohibitions too broad in their sweep, failing to distinguish between conduct that may be proscribed and conduct that must be permitted." *Broadrick v. Oklahoma*, 413 U.S. 601, 607 (1973). The VPPA does not meet any of these conditions.

### A.  The VPPA Is Unconstitutionally Vague And Overbroad.

First, the VPPA is unconstitutionally vague and overbroad. The VPPA is unconstitutionally vague and overbroad as written because it regulates "any person, engaged in the business . . . of rental, sale or delivery of prerecorded video cassette tapes or similar audio visual materials" from knowingly disclosing "to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(a)-(b). Plaintiffs are interpreting this statute as applicable to a broad range of persons and entities that should not be regulated by the VPPA. As the Supreme Court has held, a statute is overbroad and, "[l]itigants are permitted to challenge a statute . . . because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick*, 413 U.S. at 612. Here, the VPPA's existence has caused, and will continue to cause, others not before this Court to refrain from the constitutionally protected commercial speech regulated by the VPPA. This is because VPPA litigation has exploded in recent years, with companies who are nothing close to the "video-tape service provider" that Congress intended to regulate when passing the VPPA, being named as defendants.[2]  Indeed, this lawsuit against a **quick-service restaurant franchise system** is perhaps among the most egregious examples of plaintiffs attempting to stretch the definition of "video-tape service provider" to absurd extremes.

These companies are being sued because the language of the VPPA is so vague and overbroad that plaintiffs are interpreting it to allow suit even if *just a single video is placed on a website and viewed*, as this case proves. This is in part because the words "business" and "delivery"

---

[2] Indeed, since 2022 alone, over 100 complaints alleging violations of the VPPA have been filed against defendants from all sectors and industries, who simply provide videos on their websites such as Hallmark Cards, Inc., NBCUniversal Media, LLC (owner of Today.com), Intuit, Gannett Company, Inc. (largest newspaper publisher in the U.S.), Weight Watchers, The Philadelphia Inquirer, the National Football League (d/b/a the NFL), Major League Baseball Advanced Media L.P., La-Z-Boy, and Equifax, Inc., just to name a few.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

are undefined in the statute, but their dictionary definitions are overly broad. Indeed, "business" is defined as "a usually commercial or mercantile activity engaged in as a means of livelihood" or "a commercial or sometimes an industrial enterprise" ("business" (def. 1a, 1b), https://www.merriam-webster.com/dictionary/business), while "delivery" is  defined as "the act or manner of delivering something." *See* "delivery" (def. 1),  https://www.merriam-webster.com/dictionary/delivery; s*ee also* "delivery" (def. 5),  https://www.dictionary.com/browse/delivery (defined as "the act or manner of giving or sending forth.").

Based on these overly broad, undefined words, plaintiffs are attempting to bring VPPA claims against virtually *any entity* that has a video on its website, taking Congress' intention to regulate video tape service providers, such as the video store rental companies contemplated in the legislative history, to no end. The VPPA is vague and overbroad because there is no curtailment to the definition of a "video tape service provider" necessary to exclude those persons who merely provide videos on websites, but whose primary purpose is not to sell, rent, or deliver audio visual materials.

Rather, plaintiffs have interpreted the VPPA to apply to entities such as ***quick-service restaurant franchise systems***, as we can see from this very lawsuit, and the number and breadth of VPPA claims brought against companies from all industries, described above. Seeing that the VPPA is actively being interpreted far too broadly proves that the language of the VPPA "fail[s] to distinguish between conduct that may be proscribed and conduct that must be permitted" and that it likely "cause[s] others not before the court to refrain from constitutionally protected speech." *Broadrick*, 413 U.S. at 612. This is because, based on a definition of "video tape service provider" as a "business" that "rents, sells, or delivers" audio visual materials, persons in any and all sectors, including restaurants, beauty stores, government entities, *etc*. may refrain from otherwise legal conduct (*i.e.* sharing user information with third parties as permitted by other applicable statutes) in fear that they will fall under the VPPA's purview. Therefore, the VPPA is unconstitutionally vague and overbroad.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**B.  The Government Has No Substantial Interest In Restricting Disclosure Of Identifying Information With Video Watch Information.**

Next, even if the VPPA was not unconstitutionally vague and overbroad, the government does not have a "substantial interest" in restricting disclosure of "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." As the Supreme Court explained, "without persuasive evidence that a novel restriction on content is part of a long (if heretofore unrecognized) tradition of proscription, a legislature may not revise the judgment [of] the American people, embodied in the First Amendment, that the benefits of its restrictions on the Government outweigh the costs." *Brown v. Entertainment Merchants Assoc.*, 564 U.S. 786, 792 (2011). There is no "persuasive evidence" that restrictions on this information imposed under section 2710 are "part of a long tradition of proscription." *Id.*

**C.  The VPPA's Requirements Do Not Directly and Materially Advance The Government's Interest.**

Third, if the government does have a "substantial" interest to prevent the disclosure of the information protected by the VPPA, the onerous notice and consent process in section 2710—which includes, *inter alia*, consent for disclosure to be collected "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer"—does not "directly and materially advance[ ] that interest." To do so, "[t]here must be a 'fit between the legislature's ends and the means chosen to accomplish those ends.'" *IMS Health*, 564 U.S. at 572 (quoting *Bd. of Trustees of State Univ. of New York v. Fox*, 492 U.S. 469, 480 (1989)). "These standards ensure not only that the State's interests are proportional to the resulting burdens placed on speech but also that the law does not seek to suppress a disfavored message." *Id.*

Section 2710's onerous notice and consent requirements do not materially advance any interest because other forms of disclosure and consent—such as providing information about privacy practices in a Privacy Policy—are equally effective to ensure consumers know they are providing their information and voluntarily do so.

- 16 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

### D.  The VPPA's Requirements Are Far More Extensive Than Necessary To Serve Any Government Interest.

The VPPA's requirements are far more extensive than necessary to serve any government interest. Requiring "informed, written consent (including through an electronic means using the Internet) of the consumer that – (i) is in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer; (ii) at the election of the consumer that—(I) is given at the time the disclosure is sought; or (II) is given in advance for a set period of time, not to exceed 2 years or until consent is withdrawn by the consumer, which is sooner; and (III) the video tape service provider has provided an opportunity, in a clear and conspicuous manner, for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election" is far "more extensive than necessary to serve the interest" of preventing disclosure.  As the Sixth Circuit noted in *Daniel v. Cantrell*, "[j]ust because Congress' goal was to prevent the disclosure of private information, does not mean that Congress intended the implementation of every conceivable method of preventing disclosures." 375 F.3d 377, 383-384 (6th Cir. 2004). As the court explained, converting the information to "hieroglyphics" would also protect the information, but would be more extensive than necessary.  Requiring consent to be in a stand-alone form, separate from any other financial or legal obligation; to re-obtain a consumer's consent at a minimum, every two years; and to give consumers the opportunity to withdraw consent "on a case-by-case basis", is even more extensive, because it restricts the holder of the information not only from disclosing the information, but also from using the information for completely legal purposes, *i.e.* marketing and advertising.

### III.   THE VPPA, AS APPLIED, VIOLATES THE FIRST AMENDMENT.

As described *supra* § II, the VPPA is vague and overbroad because it fails to provide a curtailed definition of what constitutes a "video tape service provider." Rather than make clear the types of entities regulated by the statute, the statute is being interpreted to allow for regulation of any "business" that "delivers" audio visual materials. Therefore, the VPPA, as applied to Chick-fil-A is far too vague and overbroad because, pursuant to the definition of a VTSP, Chick-fil-A is

- 17 -

1
2
3
4

potentially subject to the VPPA as a "video tape service provider" and prohibited from sharing otherwise legal commercial information with third-parties, as is common in all commercial industries, even though Chick-fil-A is nothing like the "video rental store" contemplated by Congress when enacting the VPPA.

## **CONCLUSION**

For the foregoing reasons, Chick-fil-A respectfully requests that this Court dismiss Plaintiffs' First Amended Class Action Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6), and for all further and other relief as this Court deems just.

Dated:    April 18, 2023

Respectfully submitted,

BAKER & HOSTETLER LLP

By:    */s/Bethany G. Lukitsch*
      Bethany G. Lukitsch (314376)
      Email: blukitsch@bakerlaw.com

Attorneys for Defendant
CHICK-FIL-A, INC.,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES