Bethany G. Lukitsch (314376)
BAKER & HOSTETLER LLP
11601 Wilshire Boulevard
Suite 1400
Los Angeles, CA  90025-0509
Telephone:      310.820.8800
Facsimile:      310.820.8859
Email:          blukitsch@bakerlaw.com

Joel C. Griswold (*Admitted Pro Hac Vice*)
BAKER & HOSTETLER LLP
200 South Orange Avenue
Suite 2300
Orlando, FL 32801-3432
Telephone: 407.649.4000
Facsimile: 407.841.0168
Email: jcgriswold@bakerlaw.com

Attorneys for Defendant
CHICK-FIL-A, INC., and DOES 1 through 10,
inclusive

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

KEITH CARROLL. individually and on behalf of all others similarly situated,

        Plaintiff,

        v.

CHICK-FIL-A, INC., and DOES 1 through 10, inclusive,

        Defendant.

**CASE NO.: 4:23-CV-00314-YGR**

**DEFENDANT'S REPLY IN SUPPORT OF ITS 12(B)(6) MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

Date:      June 27, 2023
Time:      2:00 p.m.

1
2
3
4
5
6
7
8
9
10

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

I.   PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF THE
     VPPA. ......................................................................................................................... 1

     A.   Plaintiffs Do Not Allege Chick-fil-A Is A Video Tape Service
          Provider. .......................................................................................................... 1

     B.   Plaintiffs Do Not Allege They Are "Consumers" Protected By The
          VPPA. ............................................................................................................... 3

          i.   Plaintiffs Are Not "Purchasers" Of Goods From A Video Tape
               Service Provider. ...................................................................................... 3

          ii.  Plaintiffs Are Not "Subscribers" Of Goods From A Video Tape
               Service Provider. ...................................................................................... 5

     C.   Plaintiffs Do Not Allege That Chick-fil-A Disclosed PII, Let Alone
          Knowingly. ....................................................................................................... 7

          i.   Plaintiffs Do Not Allege That Chick-fil-A Disclosed Plaintiffs'
               FID. ............................................................................................................ 8

          ii.  Plaintiffs Do Not Allege That Chick-Fil-A Disclosed Plaintiffs'
               GID. ......................................................................................................... 10

II.  THE VPPA IS UNCONSTITUTIONAL FACIALLY AND AS APPLIED. ........ 10

     A.   The VPPA Is Unconstitutionally Vague and Overbroad. .......................... 10

     B.   The Government Has No Substantial Interest In Restricting Disclosure
          Of Identifying Information With Video Watch Information. ................... 12

     C.   The VPPA's Requirements Do Not Directly And Materially Advance,
          And Are Far More Extensive Than Necessary To Serve, Any
          Government Interest. .................................................................................... 12

     D.   Neither Stark v. Patreon, Heart I, Hearst II, Nor Advance Magazine
          Publishers Support Plaintiff's Position. .................................................... 14

CONCLUSION ................................................................................................................. 15

- i -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ambrose v. Bos. Globe Media Partners LLC*,
   No. CV 21-10810-RGS, 2022 WL 4329373 (D. Mass. Sept. 19, 2022) .................................. 2

*Austin-Spearman v. AMC Network Ent. LLC*,
   98 F. Supp. 3d 662 (S.D.N.Y. 2015)...................................................................................... 6

*Belozerov v. Gannett Co.*,
   No. CV 22-10838-NMG, 2022 WL 17832185 (D. Mass. Dec. 20, 2022).............................. 2

*Boelter v. Advance Magazine Publishers Inc.*,
   210 F. Supp. 3d 579 (S.D.N.Y. 2016)................................................................................... 14

*Boelter v. Hearst Communications, Inc.*,
   192 F. Supp. 3d 427 (S.D.N.Y. 2016)................................................................................... 14

*Boelter v. Hearst Communications, Inc.*,
   269 F. Supp. 3d 172 (S.D.N.Y. 2017)................................................................................... 14

*Brown v. Entertainment Merchants Assoc.*,
   564 U.S. 786 (2011)............................................................................................................. 12

*Buechler v. Gannett Company, Inc.*,
   No. 1:22-cv-01464 (D. Del.)................................................................................................ 11

*Cantu v. Hallmark Cards, Inc.*,
   No. 2:22-cv-08473 (C.D. Cal.)............................................................................................. 11

*Cantu v. WW.com (d/b/a Weight Watchers)*,
   No. 2:22-cv-07977 (C.D. Cal.)............................................................................................. 11

*Cappello v. Walmart Inc.*,
   No. 18-CV-06678-RS, 2019 WL 11687705 (N.D. Cal. Apr. 5, 2019) .................................. 2

*Carroll v. La-Z-Boy, Inc.*,
   No. 2:23-cv-10744 (E.D. Mich.)........................................................................................... 11

*Carter v. Scripps Networks, LLC*,
   No. 22-cv-2031 (PKC), 2023 WL 3061858 (S.D.N.Y. Apr. 24, 2023).............................. 4, 6

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*,
   447 U.S. 557, 100 S. Ct. 2343, 65 L. Ed. 2d 341 (1980) ................................................... 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Crowell v. Benson*,
    285 U.S. 22 (1932) ..................................................................................................... 3

*Czarnionka v. Epoch Times Ass'n, In*c.,
    No. 22 CIV. 6348 (AKH), 2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022) ....................... 2, 8

*Ellis v. Cartoon Network, Inc*.,
    803 F.3d 1251 (11th Cir. 2015) ............................................................................. 5, 7, 13

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
    402 F. Supp. 3d 767 (N.D. Cal. 2019) ............................................................................ 2

*Fed. Hous. Fin. Agency v. UBS Americas Inc*.,
    712 F.3d 136 (2d Cir. 2013) .......................................................................................... 4

*Golden v. NBCUniversal Media, LLC*,
    No. 1:22-cv-09858 (S.D.N.Y.) ..................................................................................... 11

*Guider-Shaw v. Equifax, Inc*.,
    No. 1:22-cv-05733 (N.D. Ill.) ...................................................................................... 11

*Hartranft v. Encore Cap. Grp., Inc*.,
    543 F. Supp. 3d 893 (S.D. Cal. 2021) ............................................................................ 9

*Hayes v. Major League Baseball Advanced Media L.P.*,
    No. 1:22-cv-05822 (N.D. Ill.) ...................................................................................... 11

*Hughes v. National Football League*,
    No. 1:22-cv-10743 (S.D.N.Y.) ..................................................................................... 11

*In re Hulu Priv. Litig*.,
    No. C 11-03764 LB, 2012 WL 3282960 (N.D. Cal. Aug. 10, 2012) ................................. 2

*Jefferson v. Healthline Media, Inc*.,
    No. 3:22-CV-05059-JD, 2023 WL 3668522 (N.D. Cal. May 24, 2023) .......................... 4, 6

*Jones v. United States*,
    529 U.S. 848 (2000) ..................................................................................................... 3

*Lebakken v. WebMD, LLC*,
    No. 1:22-CV-644-TWT, 2022 WL 16716151 (N.D. Ga. Nov. 4, 2022) ............................ 2

*Maloney v. Intuit, Inc*.,
    No. 1:22-cv-06351 (N.D. Ill.) ...................................................................................... 11

*Meyer v. Uber Techs., Inc*.,
    868 F.3d 66 (2d Cir. 2017) .......................................................................................... 13

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016) .................................................................................. 9

*Perry v. Cable News Network, Inc.*,
854 F.3d 1336 (11th Cir. 2017) ......................................................................... 5, 7

*Robinson v. Disney Online*,
152 F. Supp. 3d 176 (S.D.N.Y. 2015) .................................................................. 8

*Stark v. Patreon, Inc.*,
2023 WL 2090979 (N.D. Cal. Feb. 17, 2023) ............................................... 11, 14

*Stark v. Patreon, Inc.*,
No. 3:22-cv-03131-JCS, Doc. 49-1 (N.D. Cal. Dec. 5, 2021) ........................... 12

*United States v. Hansen*,
25 F.4th 1103 (9th Cir.), *cert. granted,* 143 S. Ct. 555 (2022) .......................... 11

*United States v. Jones*,
965 F.3d 190 (2d Cir. 2020) .................................................................................. 8

*United States v. Stevens*,
559 U.S. 460 (2010) ............................................................................................ 11

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ............................................................ 1, 2

*Yershov v. Gannett Satellite Info. Network, Inc.*,
104 F. Supp. 3d 135 (D. Mass. 2015) ................................................................ 6, 7

**Statutes**

18 U.S.C.A. § 2721 ..................................................................................................... 8

15 U.S.C. § 2613(c)(1)(B)(ii) ..................................................................................... 8

18 U.S.C. § 2710 ................................................................................................... 3, 14

18 U.S.C. § 2710(a)(1) .............................................................................................. 15

18 U.S.C. § 2710(a)(4) ...................................................................................... 1, 3, 15

42 U.S.C. § 9604(e)(7)(E)(ii) ..................................................................................... 8

42 U.S.C. § 11042(b)(2) .............................................................................................. 8

Mich. Comp. Laws § 445.1711(a) ............................................................................ 15

Mich. Comp. Laws § 445.1712(1) ............................................................................ 15

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- iv -

Mich. Comp. Laws § 445.1713(a) ............................................................................... 15

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 15

**Other Authorities**

https://www.merriamwebster.com/dictionary/disclosure (last visited May 26, 2023) .................................................................................................................... 8

S. Rep. No. 100-599 (1988) ................................................................................. 2, 4

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

DEFENDANT'S REPLY IN SUPPORT OF ITS 12(B)(6) MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO.: 4:23-CV-00314-YGR
4864-2964-9766.2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## INTRODUCTION

A quick-service restaurant franchise system is not a video tape service provider. Plaintiffs'[1] First Amended Complaint should be dismissed in its entirety with prejudice for failure to allege any cognizable VPPA claim against Chick-fil-A. Plaintiffs attempt to twist the application of the VPPA to apply to quite literally any entity that hosts a single video on its website, an interpretation which is beyond the legislature's intent when passing the VPPA and is an unconstitutional application of the statute. Additionally, Plaintiffs have failed to show that they are "consumers" protected by the VPPA or that Chick-fil-A has disclosed any PII through the Pixel or Google Tag Manger. Plaintiffs' First Amended Complaint should be dismissed with prejudice.

I.   **PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF THE VPPA.**

A.   **Plaintiffs Do Not Allege Chick-fil-A Is A Video Tape Service Provider.**

Plaintiffs do not dispute that in order to be "engaged in the business" of delivering video materials, delivering video materials must be "a focus of the defendant's work." (Br. at 4-5 (quoting *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017).) Nor do they point to any allegations in the Complaint that would support a conclusion that Chick-fil-A, *a franchise system of retail quick-service restaurants*, meets that standard. Both the face of the Complaint and common sense dictate that Plaintiffs have not alleged (and could not possibly allege) that Chick-fil-A is "engaged in the business" of delivering videos as required to qualify as a "video tape service provider" under the VPPA. That alone requires dismissal.

Moreover, Plaintiffs have not alleged that the videos at issue in the Complaint are "similar" to the "prerecorded video cassette tapes" covered by the statute. *See* 18 U.S.C. § 2710(a)(4). Plaintiffs argue that the VPPA's legislative history recognizes "Congress' intent to cover new technologies for pre-recorded video content," but then cite S. Rep. 100-599 (1988), which discusses "similar audio visual materials, such as laser discs, open-reel movies, or CDI technology." (Opp.

---

[1] Plaintiff Rodriguez is the subject of Chick-fil-A's pending Motion for Limited, Early Discovery to Determine Arbitrability of Plaintiff's Claim. (Doc. 30.) If Plaintiff Rodriguez is subject to an individual arbitration agreement, then Chick-fil-A brings this Motion to Dismiss solely with respect to Plaintiff Carroll's claim and will seek to compel individual arbitration of Plaintiff Rodriguez's claim.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

at 1.) As noted in Chick-fil-A's opening brief, the short, promotional videos on Chick-fil-A's website are nothing like the full-length entertainment options available at video rental stores in 1988 when the statute was passed and discussed in the Senate report Plaintiffs reference. (Br. at 4-5.)

Plaintiffs argue "[t]here is nothing in the plain language of the VPPA statute that defines a 'video tape service provider' as limited to a business engaged in a media business or actually selling or renting video media." (Opp. at 2-3.) (Br. at 7-12). Plaintiffs are wrong.  The VPPA *does* explicitly limit its application to persons *engaged in the business of* providing video content, which courts, as noted above, have interpreted to mean "a focus of the defendant's work." *In Re Vizio, Inc., Consumer Priv. Litig.,* 238 F. Supp. 3d at 1221.

Further, Plaintiffs attempt to persuade the Court that Chick-fil-A is a VTSP because "federal courts have interpreted the term, 'video tape service provider,' as including commercial website owners/operators." (Opp. at 2.) However, in many of the cases Plaintiffs cite, the court did not even address any challenge to whether the defendant was a VTSP—and no case even came close to holding that a quick-service restaurant franchise system could qualify as a "video tape service provider."[2]  Moreover, the reality is that the videos on Chick-fil-A's website are merely an incidental medium to advertise Chick-fil-A branded restaurants. (*See, e.g.*, Am. Compl. ¶ 52 (alleging that Plaintiff viewed videos to "learn[] more about Defendant and its goods and services").)

Plaintiffs next attempt to argue that Chick-fil-A has somehow "acknowledged" that the

---

[2] *See Belozerov v. Gannett Co.,* No. CV 22-10838-NMG, 2022 WL 17832185, at *3 (D. Mass. Dec. 20, 2022) (holding defendant is a VTSP because "both parties characterize the case at bar and *Yershov* as involving 'the same issues' and *Yershov* held defendant to be a VTSP); *Czarnionka v. Epoch Times Ass'n, In*c., No. 22 CIV. 6348 (AKH), 2022 WL 17069810, at *4 (S.D.N.Y. Nov. 17, 2022) (defendant did not challenge whether it was a VTSP and, therefore, the Court did not consider the issue*); Lebakken v. WebMD, LLC*, No. 1:22-CV-644-TWT, 2022 WL 16716151, at *5 (N.D. Ga. Nov. 4, 2022) (same); *Ambrose v. Bos. Globe Media Partners LLC*, No. CV 21-10810-RGS, 2022 WL 4329373, at *2 (D. Mass. Sept. 19, 2022) (same); *Cappello v. Walmart Inc*., No. 18-CV-06678-RS, 2019 WL 11687705, at *1 (N.D. Cal. Apr. 5, 2019) (Walmart found to be a VTSP because *it sold DVDs, Blue-ray discs* and other video media); *In re Facebook, Inc., Consumer Priv. User Profile Litig.,* 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019) (same); *In re Hulu Priv. Litig*., No. C 11-03764 LB, 2012 WL 3282960, at *6 (N.D. Cal. Aug. 10, 2012) (same).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

VPPA applies to it because Chick-fil-A challenges the VPPA's constitutionality by arguing the statute is overbroad. (Opp. at 3.) But what Chick-fil-A actually argues is that if the Court interprets the VPPA as Plaintiffs are proposing, then the VPPA is unconstitutional. (Br. at 17-18.) There is nothing inconsistent with arguing that the VPPA should be properly construed not to extend to companies like Chick-fil-A as a matter of statutory interpretation, and additionally arguing that if the VPPA is read as Plaintiffs are proposing, then it is unconstitutional. Indeed, the fact that the reading Plaintiffs propose would make the VPPA unconstitutional is a further reason that this Court should adopt the appropriately constrained reading that Chick-fil-A has advocated for here. *See, e.g.*, *Jones v. United States*, 529 U.S. 848, 857 (2000) (applying the constitutional avoidance canon to prevent an overly broad application of a statute); *Crowell v. Benson*, 285 U.S. 22, 62 (1932) ("When the validity of an act of the Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.").

Finally, Plaintiffs assert in a cursory fashion that their proposed interpretation of the statute is not unbounded because "website owners/operators with no commercial interest are clearly beyond the scope of the VPPA." (Opp. at 3.) But "commercial interest" is not a phrase defined in or even used by the statute. *See* 18 U.S.C. § 2710. Nor is it clear what Plaintiffs mean by that term. The distinction Plaintiffs propose has no basis in the statutory text and, in any event, does nothing to address the issues Chick-fil-A has raised with respect to Congress's decision to define a "video tape service provider" as being "engaged in the business" of selling, renting, or delivering "prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). Plaintiffs simply have not alleged (nor can they) that Chick-fil-A, *a quick-service restaurant franchisor company*, is a "video tape service provider."

## B. **Plaintiffs Do Not Allege They Are "Consumers" Protected By The VPPA.**

### i. *Plaintiffs Are Not "Purchasers" Of Goods From A Video Tape Service Provider.*

As Chick-fil-A argued in its opening brief, Plaintiffs are not "consumers" by virtue of their

- 3 -

alleged past purchase of Chick-fil-A food because their prior purchase is entirely disconnected from the alleged viewing of videos on the Websites. (Br. at 7.) Plaintiffs argue that "the VPPA does not define or restrict the meaning of the term, 'purchaser,' to a person who buys any goods or services by a particular method or location," and that the VPPA does not "define or limit such term to a person why buys any goods or services constituting audio visual materials." (Opp. at 3-4.)

Although "[t]he statute does not limit or qualify 'goods or services' to video materials," "[c]ourts must 'ascertain how a reasonable reader would understand the statutory text, considered as a whole...'" *Carter v. Scripps Networks, LLC,* No. 22-cv-2031 (PKC), 2023 WL 3061858, at *5 (S.D.N.Y. Apr. 24, 2023) (quoting *Fed. Hous. Fin. Agency v. UBS Americas Inc.*, 712 F.3d 136, 141 (2d Cir. 2013)). "The scope of a 'consumer,' when read with sections 2710(b)(1) and (a)(4), is cabined by the definition of 'video tape service provider,' with its focus on the rental, sale or delivery of audio visual materials." *Id.* at *6. Thus, "[i]n the statute's full context, a reasonable reader would understand the definition of 'consumer' to apply to a renter, purchaser, or subscriber of audio-visual goods or services, and not goods or services writ large." *Id.* at *6. This interpretation also is supported by legislative history, which explains that the VPPA "is drafted 'to make clear that simply because a business is engaged in the sale or rental of video materials or services *does not mean that all of its products or services are within the scope of the [law]." Id.* (quoting Senate Report 100-599, at 12).

Therefore, as here, where a person is a consumer of *other products or services unrelated to rental, sale, or delivery of video materials*, the person is not a consumer protected by the VPPA. *See Scripps Networks,* 2023 WL 3061858, at *2 (dismissing VPPA claim against HGTV on grounds that plaintiffs were "not subscribers to audio visual materials" where the plaintiffs subscribed to HGTV newsletters bur did not "plausibly allege that their status as newsletter subscribers was a condition to accessing the site's videos, or that it enhanced or in any way affected their viewing experience."); *Jefferson v. Healthline Media, Inc.*, No. 3:22-CV-05059-JD, 2023 WL 3668522, at *3 (N.D. Cal. May 24, 2023) (allegations that plaintiff entered her name and email address to "subscribe to Healthline's email list" did not make plaintiff a consumer because "the VPPA limits

- 4 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1  its scope to subscribers of 'goods or services' from a video tape service provider").

2  This interpretation makes sense because, construed in the way Plaintiffs contend, Plaintiffs

3  could have purchased a sandwich from Chick-fil-A one time, 15 years ago, and now, somehow,

4  their action of watching a video on Chick-fil-A's website in 2022 makes them "purchasers"

5  protected by the VPPA. Construing the VPPA in such a way would be absurd.

6  Finally, Plaintiffs contend that Chick-fil-A's citation to *Perry* and *Ellis* in support of this

7  argument are inapplicable because those cases only considered whether plaintiff was a subscriber

8  (Opp. at 4).  This distinction, however, does not mean the analysis which led the courts to determine

9  whether the VPPA applied to the plaintiffs is inapplicable. Rather, both *Perry* and *Ellis* show that

10  the Court should consider the product at issue when determining whether Plaintiffs are purchasers

11  or subscribers protected by the VPPA. *See Perry v. Cable News Network, Inc*., 854 F.3d 1336,

12  1342-43 (11th Cir. 2017) (plaintiff was not "subscriber" of video content on free CNN app merely

13  because he paid for cable TV separate from app); *Ellis v. Cartoon Network, Inc*., 803 F.3d 1251,

14  1257 (11th Cir. 2015) (holding same).

15  ## ii.  *Plaintiffs Are Not "Subscribers" Of Goods From A Video Tape Service*

16  *Provider.*

17  Plaintiffs contend that the allegation that they downloaded Defendant's mobile application

18  onto their smartphone devices alone suffices to make Plaintiffs "subscribers." (Opp. at 5 (quoting

19  FAC. ¶ 51).) Not so. Rather, "downloading an app for free and using it to view content at no cost

20  is not enough to make a user of the app a 'subscriber' under the VPPA, as there is no ongoing

21  commitment or relationship between the user and the entity which owns and operates the app."

22  *Ellis*, 803 F.3d at 1257. Plaintiffs ignore the plain holding in *Ellis* that downloading an app does

23  not make a user a "subscriber" and simply note that lack of payment is not dispositive on the issue

24  of whether one is a consumer. (Opp. at 5.) But Chick-fil-A's argument does not concern the issue

25  of payment. Rather, Chick-fil-A has argued that Plaintiffs are not subscribers because there has not

26  been an "ongoing commitment or relationship between the user and the entity which owns and

27  operates the app" as required under *Ellis* to be a subscriber. Notably, Plaintiffs ignore Chick-fil-

28

- 5 -

A's citation to *Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662, 669 (S.D.N.Y. 2015) which further supports that to be a subscriber, some sort *of exchange of future or recurrent benefits* between Plaintiffs and Chick-fil-A must occur. (Br. at 6); *see also Scripps Networks,* 2023 WL 3061858, at *2 (dismissing VPPA claim against HGTV on grounds that plaintiffs were "not subscribers to audio visual materials" where the plaintiffs subscribed to HGTV newsletters bur did not "plausibly allege that their status as newsletter subscribers was a condition to accessing the site's videos, or that it enhanced or in any way affected their viewing experience."); *Healthline Media*, 2023 WL 3668522, at *3.

Plaintiffs then spend several pages arguing that the Court should ignore the holding in *Ellis* and instead follow *Yershov v. Gannett Satellite Info. Network, Inc.*, 104 F. Supp. 3d 135 (D. Mass. 2015)—but Plaintiffs' entire argument is based on a misreading of *Yershov*.[3] The *Yershov* court expressly held "only that the transaction described in the complaint—whereby Yershov used the mobile device application that Gannett provided to him, which ***gave Gannett the GPS location of Yershov's mobile device at the time he viewed a video, his device identifier, and the titles of the videos he viewed in return for access to Gannett's video content***—plausibly pleads a case that the VPPA's prohibition on disclosure applies." *Yershov*, 820 F.3d at 489 (emphasis added). In coming to this holding, the *Yershov* Court explained that, "while [plaintiff] paid no money, access was not free of ***a commitment to provide consideration in the form of that information***, which was of value to [defendant.]" *Id*. (emphasis added.)

Unlike *Yershov*, where the plaintiff allegedly provided his GPS location, mobile device identifier, and video viewing information to the defendant in exchange for the defendant providing access to video content through the app, here Plaintiffs have not alleged that they provided *any* information to Chick-fil-A in connection with downloading or using the free app, or that Chick-fil-A provided *any* services (much less ongoing services or access to videos) to Plaintiffs through the app. Although Plaintiffs' opposition brief misleadingly suggests that Plaintiffs should meet the

---

[3] To the extent that *Yershov* can be read as requiring something less than the standard in *Ellis* to be a "subscriber," *Yershov* is wrongly decided and this Court should follow *Ellis*.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

standard in *Yershov* based on their allegation that their Facebook IDs are allegedly transmitted to Facebook, Plaintiffs do not allege that they provided their Facebook IDs ("FIDs") or Google IDs ("GIDs") to Chick-fil-A in exchange for downloading the app, or that they watched videos through the app. Plaintiffs' only allegation referencing the app is: "Plaintiffs also downloaded Defendant's mobile application onto their smartphone devices, which established Plaintiffs' seamless access to Defendant's Websites and its products." (FAC ¶ 51.) This does not meet the standard articulated in *any* of the cases that Plaintiffs cite, which all required allegations demonstrating some commitment and exchange of benefits for the plaintiff to be considered a "subscriber" under the VPPA. *See Ellis*, 803 F.3d at 1257 ("downloading an app for free and using it to view content at no cost is not enough to make a user of the app a 'subscriber' under the VPPA, as there is no ongoing commitment or relationship between the user and the entity which owns and operates the app."); *Perry*, 854 F.3d at 1342 ("Perry is not a subscriber of CNN because he has not demonstrated an ongoing commitment or relationship with CNN."); *Yershov*, 820 F.3d at 489 ("access was not free of a commitment to provide consideration in the form of that information").

In short, unlike in *Yershov*, Plaintiffs do not allege that (1) their FIDs or GIDs were shared through their use of the app; (2) that they watched any videos on the app; or (3) that the app collected any data at all from them when they downloaded it. Rather, Plaintiffs only allege that through their *use of Chick-fil-A's Websites*, their FIDs, GIDs, and video watch information were allegedly sent to Facebook. (*See* Compl. ¶¶ 19-20, 25, 30, 41-42, 46.)  Plaintiffs are not subscribers of Chick-fil-A based on their alleged download of a free app.

## C.  **Plaintiffs Do Not Allege That Chick-fil-A Disclosed PII, Let Alone *Knowingly.***

Plaintiffs spend a lengthy time explaining that PII under the VPPA includes more than just video titles, but also video descriptions and subject matter of videos coupled with personally identifiable information. (Opp. at 8-11.) Chick-fil-A, however, does not argue to the contrary in its opening motion. Rather, Chick-fil-A argues that even if Chick-fil-A disclosed video titles, video descriptions, or subject matter of videos, Plaintiffs fail to allege that Chick-fil-A disclosed PII ***along with*** those disclosures (Br. at 7-12), as detailed further below.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 7 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    Moreover, Plaintiffs argue this Court should find they have plausibly alleged that Chick-fil-

2    A knowingly disclosed their PII because courts in other cases have done so, citing *Czarnionka* for

3    the proposition that, "[b]y installing the Pixel, Defendant opened a digital door and invited

4    Facebook to enter that door and extract information from within." (Opp. at 14-15 (citing

5    *Czarnionka*, 2022 WL 17069810, a *3).) "Opening a digital door" is not the same as "disclosure,"

6    which means "the act or an instance of disclosing," and Plaintiffs have not alleged (and cannot

7    allege) *Chick-fil-A itself* has disclosed anything. *See* "disclosure,"

8    https://www.merriamwebster.com/dictionary/disclosure (last visited May 26, 2023). If Congress

9    had intended for acts broader than "disclosure" to be covered by the statute, Congress could have

10   included broader terms—such as "otherwise make available"—as Congress has repeatedly done in

11   other statutes.[4] Without any indication in the statutory text that Congress meant more than

12   "disclosure," this Court must take the plain meaning of disclosure and find that Chick-fil-A itself

13   did not disclose PII. *See United States v. Jones*, 965 F.3d 190, 194 (2d Cir. 2020) ("Our starting

14   point in statutory interpretation is the statute's plain meaning….").

15   Finally, Plaintiffs do not dispute that Chick-fil-A has no way to know whether Plaintiffs or

16   any other user had an FID or GID—much less what that FID or GID was, whether any browser

17   hosts Facebook or Google cookies, or whether any PII is hosted on a Facebook or Google profile.

18   *i.   Plaintiffs Do Not Allege That Chick-fil-A Disclosed Plaintiffs' FID.*

19   Plaintiffs argue that they have adequately alleged that Chick-fil-A disclosed Plaintiff

20   Carroll's FID because courts outside the Ninth Circuit have found that a FID is PII and this Court

21   should do the same. (Opp. at 12.) However, as Chick-fil-A explained in its opening brief, PII "must

22   itself do the identifying…." *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 182 (S.D.N.Y. 2015).

23

24   [4] *See, e.g.*, 18 U.S.C.A. § 2721 ("A State department of motor vehicles, and any officer, employee,
     or contractor thereof, shall not knowingly disclose *or otherwise make available* to any person or

25   entity: (1) personal information….") (emphasis added); 15 U.S.C. § 2613(c)(1)(B)(ii) (requiring
     determination "that the information is not required to be disclosed *or otherwise made available* to

26   the public…" (emphasis added); 42 U.S.C. § 11042(b)(2) (requiring showing that "information is
     not required to be disclosed, *or otherwise made available*, to the public…") (emphasis added); 42

27   U.S.C. § 9604(e)(7)(E)(ii) (requiring showing that "information is not required to be disclosed, *or
     otherwise made available*, to the public…").

28

- 8 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Under this standard, only "information that would readily permit an ordinary person to identify a specific individual's video-watching behavior" can qualify as PII under the statute. *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 267 (3d Cir. 2016). Because Plaintiffs' allegation shows that the FID is merely a string of numbers assigned by Facebook (FAC ¶ 25, Figure 5 (showing Facebook ID "100087271304389"), Plaintiffs have not (and cannot) allege that the FID itself "would readily permit an ordinary person to identify a specific video-watching behavior." Plaintiffs consequently have not alleged any disclosure of PII.

Next, Plaintiffs attempt to argue that Chick-fil-A disclosed PII because they have alleged that using the Pixel, "Defendant has configured the microdata to disclose the video's title and other descriptors" and "the aggregate pixel events (Page View, Microdata Automatically Detected, and Button Click Automatically Detected) permit an ordinary person to identify a video's content, title, and location." (Opp. at 11.) Yet, again, Plaintiffs seem to confuse the sharing of video viewing information, *alone*, as "sharing PII"—it is not. Without coupling this information with Chick-fil-A's own disclosure of personally identifiable information, this video viewing information is not PII under the VPPA.

Plaintiffs next argue that they have alleged Chick-fil-A itself discloses Plaintiffs' FID because "the FAC alleges that by embedding the Facebook Tracking Pixel's code onto its Evergreen Hills website, Defendant compels a user's browser to send numerous cookies to Facebook." (Opp. at 11-12, citing FAC ¶¶ 30-33.) Plaintiffs' allegations specifically state that Chick-fil-A "compels **a visitor's browser to transmit** the c_user cookie to Facebook. The c_user cookie contains the visitor's unencrypted Facebook ID." (FAC ¶ 25 (emphasis added).) (Opp. at 15-16.) As argued in Chick-fil-A's opening brief, these allegations do not allege that Chick-fil-A disclosed Plaintiffs' PII, but rather that Plaintiffs' *own browsers* did. Further, Plaintiffs fail to address any of the judicially noticeable case law describing how cookies work, which show that Chick-fil-A itself does not disclose this data, and therefore, any opposition to this argument is waived. *Hartranft v. Encore Cap. Grp., Inc.*, 543 F. Supp. 3d 893, 913 (S.D. Cal. 2021) ("where a non-moving party fails to address an argument raised by the moving party in the opposition brief,

- 9 -

1    the Court may consider any arguments unaddressed by the non-moving party as waived.").

2                    *ii.   Plaintiffs Do Not Allege That Chick-Fil-A Disclosed Plaintiffs' GID.*

3           Plaintiffs likewise fail to allege that Chick-fil-A disclosed Plaintiff Rodriguez's GID

4    because again, Plaintiffs' allegations show the GID is merely a string of numbers assigned by

5    Google. *See* FAC ¶ 42, Figure 8 (showing Google ID "1228782302.1680624910). Moreover,

6    Plaintiffs' allegations regarding the GID lack *any* connection to PII that would *"readily permit an*

7    *ordinary person to identify a specific individual's video-watching behavior."* Plaintiffs fail to allege

8    the GID can be input anywhere by an ordinary person—or even by Google itself—and be used to

9    identify the user assigned to the GID. Notably, Plaintiffs cannot identify a single case holding that

10   a GID is PII.

11          Next, Plaintiffs attempt to argue that Chick-fil-A disclosed PII because they have alleged

12   that, "[w]henever the video is played, data is sent to Google that logs detailed information about

13   the video viewed." (Opp. at 15-16) (emphasis omitted). Again, Plaintiffs confuse the sharing of

14   video viewing information, *alone*, as "sharing PII"—but without coupling this information with

15   Chick-fil-A's own disclosure of personally identifiable information, this video viewing information

16   is not PII under the VPPA.

17          Finally, Plaintiffs argue they have alleged Chick-fil-A itself discloses Plaintiffs' GID

18   because they vaguely allege that "data is sent to Google that logs detailed information about the

19   video viewed." (*See* Br. at 10, citing FAC ¶ 42.) Again, Plaintiffs fail to address any of the judicially

20   noticeable case law describing how cookies work, which show that Chick-fil-A itself does not

21   disclose this GID cookie data, and therefore, any opposition to this argument is deemed waived.

22   *Hartranft,* 543 F. Supp. 3d at 913.

23   II.    **THE VPPA IS UNCONSTITUTIONAL FACIALLY AND AS APPLIED.**

24          A.  **The VPPA Is Unconstitutionally Vague and Overbroad.**

25          Plaintiffs argue that "an overbreadth analysis does not apply to commercial speech" but

26   rather only "non-commercial speech" that may be impacted by the overbroad statute.  (Opp. at 24

27   (citing *Stark,* 2023 WL 2090979, at *7).) Plaintiffs argue that Chick-fil-A provides no examples of

28                                              - 10 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1   "non-commercial speech" that are impacted by the VPPA. However, Chick-fil-A explicitly

2   explained that if the VPPA is interpreted as Plaintiffs are advocating, it encapsulates *any entity that*

3   *has a video on its website.*" (Br. at 15.) This means the VPPA, if interpreted as Plaintiffs advocate,

4   *does apply* to noncommercial activities such as Tik Tok social media users who upload 10-second

5   videos for their subscribers, school websites that contain videos about their curriculum, or even

6   court websites that contain informational videos about how to upload documents to their e-filing

7   system.

8          Further, as explained in *Stark,* "'[t]here are two situations in which a facial overbreadth

9   challenge can succeed: (1) when a party establishes that there is 'no set of circumstances under

10  which [the statute] would be valid or that the statute lacks any plainly legitimate sweep;' and (2)

11  ***where 'a substantial number of [the statute's] applications are unconstitutional, judged in***

12  ***relation to the statute's plainly legitimate sweep.*'"** *Stark,* 2023 WL 2090979, at *6 (citing *United*

13  *States v. Hansen*, 25 F.4th 1103, 1106 (9th Cir.) (quoting *United States v. Stevens*, 559 U.S. 460,

14  472–73 (2010)), *cert. granted,* 143 S. Ct. 555 (2022) (emphasis added).) Here, it is clear that there

15  are a substantial number of the VPPA's applications that are unconstitutional, judged in relation to

16  any purported legitimate sweep, because Plaintiffs are attempting to apply the VPPA to entities that

17  are nothing like the brick and mortar video stores contemplated by the VPPA when passed—

18  including, for example, Hallmark Cards, La-Z-Boy, Weight Watchers, the National Football

19  League, Major League Baseball, Intuit, and Equifax, as well as other media companies such as

20  NBCUniversal (owner of Today.com) and Gannett (largest newspaper publisher in the U.S.), just

21  to name a few.[5]

22         Finally, Plaintiffs argue the VPPA is not vague because "it sufficiently identif[ies] the

23  conduct that is prohibited." (Opp. at 25.) However, as described above, if the VPPA is interpreted

---

24  [5] *See Cantu v. Hallmark Cards, Inc*., No. 2:22-cv-08473 (C.D. Cal.); *Carroll v. La-Z-Boy, Inc.*, No.
25  2:23-cv-10744 (E.D. Mich.); *Cantu v. WW.com (d/b/a Weight Watchers)*, No. 2:22-cv-07977 (C.D.
    Cal.); *Hughes v. National Football League*, No. 1:22-cv-10743 (S.D.N.Y.); *Hayes v. Major League*
26  *Baseball Advanced Media L.P.*, No. 1:22-cv-05822 (N.D. Ill.); *Maloney v. Intuit, Inc*., No. 1:22-
    cv-06351 (N.D. Ill.); *Guider-Shaw v. Equifax, Inc*., No. 1:22-cv-05733 (N.D. Ill.); *Golden v.*
27  *NBCUniversal Media, LLC*, No. 1:22-cv-09858 (S.D.N.Y.); and *Buechler v. Gannett Company,*
    *Inc*., No. 1:22-cv-01464 (D. Del.).

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 11 -

as Plaintiffs are advocating, such that a restaurant franchise system qualifies as a "video tape service provider" and a person can become a "consumer" of a "video tape service provider" by virtue of purchasing a chicken sandwich, then the statute certainly does not sufficiently identify the conduct that is prohibited.

### B. **The Government Has No Substantial Interest In Restricting Disclosure Of Identifying Information With Video Watch Information.**

Plaintiffs argue that "Congress's asserted governmental interest in enacting the VPPA is substantial" because the U.S. argued as such in its brief filed in *Stark v. Patreon, Inc.,* No. 3:22-cv-03131-JCS, Doc. 49-1 (N.D. Cal. Dec. 5, 2021). But Plaintiffs put forth no actual argument of their own and, instead, state that the Court "should find the U.S.'s analysis of the second factor to be persuasive." (Opp. at 20-21.) However, both the U.S. in *Stark* and Plaintiffs here can point only to a very generalized "right to privacy." (Opp. at 21.) This entirely ignores Chick-fil-A's argument that in order to support a "substantial" government interest, there must be a "long (if heretofore unrecognized) tradition of proscription" with respect to disclosure of video viewing information in particular—a standard Plaintiff does not even attempt to meet, and could not possibly meet, especially where the history of movies began with releases in public theaters where movie goers attended showings surrounded by members of the public. *See Brown v. Entertainment Merchants Assoc.*, 564 U.S. 786, 792 (2011).

### C. **The VPPA's Requirements Do Not Directly And Materially Advance, And Are Far More Extensive Than Necessary To Serve, Any Government Interest.**

Plaintiffs, again, fail to assert their own arguments as to why the VPPA's requirements directly and materially advance the government's interests and instead defer to arguments the U.S. made in *Stark*. (Opp. at 21-22.) But in doing so, Plaintiffs fail to address Chick-fil-A's argument that the onerous requirements under the VPPA are not necessary to directly and materially accomplish the legislature's goals. There is not a fit between the means and the ends because Congress has not provided, and Plaintiff has not argued, that the onerous and arbitrary consent requirements of the statute are *necessary* to advance the government's interest in obtaining user's

- 12 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1  consent to disclose video viewing information. This is especially true considering that privacy

2  policies agreed to through "click-wrap" or other means are consistently upheld by courts (*see, e.g.,*

3  *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74-75 (2d Cir. 2017) and often allow companies to disclose

4  *much more* information, and require *much less* to obtain consent, than the onerous requirements

5  under the VPPA. *See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447

6  U.S. 557, 100 S. Ct. 2343, 65 L. Ed. 2d 341 (1980) ("if the governmental interest could be served

7  as well by a more limited restriction on commercial speech, the excessive restrictions cannot

8  survive."). Plaintiffs offer no reason why obtaining consent to disclose video viewing information

9  would need to be so much more difficult than obtaining consent to disclose other information.

10  Finally, Plaintiffs attempt to argue that the VPPA's requirements are not more than

11  necessary to serve the government's interest because in *Ellis*, the court noted that the VPPA was

12  amended in 2012 to "allow consumers greater flexibility to share their video viewing preferences,

13  while maintaining their privacy, by clarifying that video tape service providers may obtain

14  informed, written consent of consumers on an ongoing basis via the Internet." (Opp. at 21 (citing

15  *Ellis*, 803 F.3d at 1253).) This amendment, however, added the precise, onerous consent

16  requirements that Chick-fil-A is challenging as unconstitutional. Therefore, Plaintiffs' contention

17  that the amendment somehow addresses these concerns falls flat.

18  Plaintiffs can point to nothing to suggest that the government's purported interest in

19  protecting user's video viewing information is proportional to the huge burdens placed on the

20  speech by requiring consent, "in a form distinct and separate from any form setting forth other legal

21  or financial obligations of the consumer at the election of the consumer that—(I) is given at the

22  time the disclosure is sought; or (II) is given in advance for a set period of time, not to exceed 2

23  years or until consent is withdrawn by the consumer, whichever is sooner; and (III) the video tape

24  service provider has provided an opportunity, in a clear and conspicuous manner, for the consumer

25  to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's

26  election." 18 U.S.C. § 2710. Indeed, it is effectively impossible to comply with these requirements

27  in the situation alleged in the Amended Complaint—real-time sharing of information about a user's

28

- 13 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

web browsing activity with Facebook—because giving "an opportunity, in a clear and conspicuous manner, for the consumer to withdraw on a case-by-case basis" would impose the onerous requirements of providing a new notice and obtaining a new consent every time the website user navigated to a new webpage.

D. **Neither Stark v. Patreon, Heart I, Hearst II, Nor Advance Magazine Publishers Support Plaintiffs' Position.**

Plaintiffs argue that *Stark v. Patreon, Inc*., 2023 WL 2090979 (N.D. Cal. Feb. 17, 2023), *Boelter v. Hearst Communications, Inc.*, 192 F. Supp. 3d 427 (S.D.N.Y. 2016) ("*Hearst I*"), *Boelter v. Advance Magazine Publishers Inc.*, 210 F. Supp. 3d 579 (S.D.N.Y. 2016), and *Boelter v. Hearst Communications, Inc.*, 269 F. Supp. 3d 172 (S.D.N.Y. 2017) ("*Hearst II*"), all support Plaintiffs' position that the VPPA is constitutional. However, in *Stark,* the Court concluded that "the VPPA would not be invalid if it only regulated speech like Patreon's alleged disclosures to Meta" *because* "Patreon [] abandoned its as-applied challenge, [and] concede[d] that consumer privacy is a substantial state interest (and for the purpose of this motion, that it is 'compelling')." Here, however, Chick-fil-A has not abandoned its as-applied challenge, nor conceded that the VPPA advances a substantial state interest.

Moreover, *Hearst I*, *Advance Magazine Publishers*, and *Hearst II* all address a Michigan statute with a materially different consent requirement. Indeed, the Michigan statue at issue only requires "written permission of the customer." *See* Mich. Comp. Laws 445.1713(a).[6] Plaintiffs'

---

[6] The Michigan statute at issue in the *Hearst* cases explicitly defines "customer" as "an individual who purchases, rents, or borrows a book, other written material, a sound recording or a video recording." Mich. Comp. Laws. 445.1711(a). In other words, the Michigan statute clearly and explicitly limits its application to individuals who have purchased, rented, or borrowed a specific type of content. This is different than the VPPA which more vaguely defines a "consumer" as a "renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). To the extent the Court rejects Chick-fil-A's argument concerning the proper interpretation of "consumer" under the VPPA (*supra* § I(B) and interprets "consumer" to include persons such as Plaintiffs—who, as explained above do *not* allege they rented, purchased, or subscribed specifically to any video content—the Michigan statute is considerably narrower than the VPPA in this respect as well. Similarly, the Michigan statute's disclosure restrictions apply to "a person . . . engaged in the business of selling at retail, renting, or lending books or other written materials, sound recordings, or video recordings." Mich. Comp. Laws 445.1712(1). The VPPA, in contrast, applies to "any person, engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). The

- 14 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1   citation to the *Hearst* cases, therefore, only serves to underscore that the VPPA's onerous and

2   arbitrary consent requirements—which go far beyond "written permission of the customer"—are

3   far broader than necessary.

4                                **CONCLUSION**

5           For the foregoing reasons, and as set forth in Chick-fil-A's opening brief, Chick-fil-A

6   respectfully requests that this Court dismiss Plaintiffs' First Amended Class Action Complaint with

7   prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) and for all further and other relief

8   as this Court deems just.

9   Dated:    June 8, 2023                Respectfully submitted,

10

11                                        BAKER & HOSTETLER LLP

12                                        By:    _____

13                                               Bethany G. Lukitsch (314376)
                                                 Email: blukitsch@bakerlaw.com

14
                                          Attorneys for Defendant
15                                        CHICK-FIL-A, INC., and DOES 1 through 10, inclusive

16

17

18

19

20

21

22

23

24

25

26

27  _____
    VPPA's references to "delivery" and "similar audio visual materials" make the VPPA more vague
    and overbroad than the Michigan statute.

28                                        - 15 -